IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
Civil Action No: 3:08-MD-1976

| | |
|---|---|
| IN RE LENDINGTREE, LLC CUSTOMER DATA SECURITY BREACH LITIGATION | DEFENDANTS' MEMORANDUM IN SUPPORT OF CONSOLIDATED MOTION TO STAY AND TO COMPEL ARBITRATION PURSUANT TO SECTIONS 3 AND 4 OF THE FEDERAL ARBITRATION ACT |

## I. PRELIMINARY STATEMENT[1]

Defendants Home Loan Center, Inc. d/b/a LendingTree Loans and LendingTree, LLC respectfully submit this memorandum in support of their Consolidated Motion to Stay and Compel Arbitration Pursuant to Sections 3 and 4 of the Federal Arbitration Act. The Judicial Panel on Multidistrict Litigation ("**Judicial Panel**") has transferred five putative class actions to this Court – Shaver, Miller, Garcia, Bradley, and Bercaw. These cases are identical in every relevant way to the three putative class actions – Spinozzi, Mitchell, and Carson – that this Court stayed and compelled to arbitration in August. Exhibit A, Transcript of August 21, 2008. The Plaintiffs in these five transferred cases – just like the plaintiffs in Spinozzi, Mitchell, and Carson – each allege they submitted personal information via LendingTree's website; that a

---

[1] For purposes of economy, LendingTree offers this one Consolidated Motion rather than separate briefs for each Plaintiff. Despite some responses being due at a later date, LendingTree moves as to the Shaver, Miller, Garcia, Bradley, and Bercaw matters at the same time. LendingTree's motion to stay and compel arises from a contract which every consumer agrees to before submitting information over LendingTree's website. In the event that Plaintiffs oppose with individualized arguments or proofs, LendingTree reserves the right to respond with individual Replies in a manner consistent with the Court's Orders.

LendingTree employee stole and resold that information, and they were injured somehow as a result. Each seeks damages from Defendant LendingTree, LLC ("**LendingTree**").

LendingTree now seeks to have these five lawsuits stayed pending arbitration, as this Court ruled in the Spinozzi, Carson, and Mitchell cases in August 2008. As was demonstrated to this Court in those cases, persons submitting information via the LendingTree site must agree to a Terms of Use Agreement ("**Terms of Use**"). As this Court found in August, even a "cursory review" of the Terms of Use indicates that it contains an arbitration clause. In suing LendingTree, Plaintiffs in these five cases now before this Court – as did the plaintiffs in Spinozzi, Carson, and Mitchell – disregarded the arbitration clause. LendingTree now is seeking to enforce the arbitration clause. This Court stayed the cases of Spinozzi, Mitchell, and Carson, and compelled each named Plaintiff to individual (non-class) arbitration. LendingTree merely seeks the same result as to the named Plaintiffs in Shaver, Miller, Garcia, Bradley, and Bercaw.[2]

## II. FACTUAL BACKGROUND

Each Plaintiff alleges that he or she requested mortgage quotes from the LendingTree website. As an unavoidable part of that process, a user of the LendingTree website must check off a box indicating that she "agree[s] to and accept[s]" the Terms of Use. A copy of the Terms of Use Agreement is made available to the consumer through an online hyperlink. The users acknowledge to LendingTree that they have read and understood the Terms of Use. Exhibit B, Declaration of Donald Norton ("Norton Decl.").

---

[2] A transferee court has the authority to decide motions to compel arbitration. In re Cintas Corp. Overtime Pay Arbitration Litigation, 444 F. Supp. 2d 1353, 1355 (JPML 2006).

While the exact language has undergone minor changes during 2007 and 2008 (all of which is described in Exhibit 5 of the Norton Decl.), the form has always required the user to affirmatively check off a box agreeing to the Terms of Use, as below:



The applicant cannot continue in this process without checking off the agreement box. Norton Decl. Therefore, to take advantage of the services which LendingTree offered, Plaintiffs each agreed to these Terms of Use.

The very first paragraph of the Terms of Use, all in bold, tells the consumer:

**THIS AGREEMENT CONTAINS AN AGREEMENT TO ARBITRATE ALL CLAIMS AND CONTAINS DISCLAIMERS OF WARRANTIES AND LIABILITY (please see sections 8 and 14). These provisions form an essential basis of our bargain.**

**If you do not agree to these terms and conditions, you are not authorized to access or use the Websites and you are to cease accessing or otherwise using the Websites.**

(Ex. B, Exhibit 1, §1.) The scope of the arbitration agreement is very broad, encompassing "[a]ny claim or controversy arising out of or relating to the use of this Web site" and "any acts or omissions for which you may contend LendingTree is liable." Id. at §14. Per the Terms of Use, all such disputes "shall be finally, and exclusively, settled by arbitration" before the American

Arbitration Association ("AAA") under the commercial arbitration rules of the AAA in effect at that time. Id.

The Terms of Use makes very clear that the envisioned arbitration will resolve individual disputes, and that no class arbitration will be allowed.

> **THIS AGREEMENT PROVIDES THAT ALL DISPUTES BETWEEN YOU AND LENDINGTREE WILL BE RESOLVED BY <u>BINDING ARBITRATION</u>. YOU THUS GIVE UP YOUR RIGHT TO GO TO COURT TO ASSERT OR DEFEND YOUR RIGHTS. YOU ALSO GIVE UP YOUR RIGHT TO PARTICIPATE IN OR BRING CLASS ACTIONS.**

(All emphasis as in original).

The attached Terms of Use also contain a provision selecting the substantive laws of North Carolina as controlling, and North Carolina as the exclusive venue of suit.

### III. PROCEDURAL HISTORY

In April of 2008, LendingTree announced that it had been the victim of criminal data theft. Plaintiffs filed eight (8) putative class actions against LendingTree and its subsidiary Home Loan Center, Inc. d/b/a LendingTree Loans ("**LendingTree Loans**") all across the country. Three of these cases – <u>Spinozzi</u>, <u>Mitchell</u>, and <u>Carson</u> were filed in this Court or were subsequently voluntarily transferred by the parties. The remaining five cases were filed in other jurisdictions.

Despite LendingTree's demand, all named Plaintiffs refused to submit their respective claims to arbitration.[3] In each of <u>Spinozzi</u>, <u>Mitchell</u>, and <u>Carson</u>, LendingTree and LendingTree

---

[3] Plaintiff's counsel announced to the Judicial Panel as early as July 14, 2008 that "all Plaintiffs in the Related Actions agree and will argue that the mandatory arbitration provision, along with the choice of law provision, is unconscionable and therefore unenforceable." <u>Exhibit C</u>, Garcia and Bradley Response to the Petition, pp. 6-7; <u>Exhibit D</u>, Bercaw and Shaver Response to the Petition, p. 1 (joining Garcia and Bradley Response). <u>Accord</u>, <u>Exhibit E</u>, Letter from Counsel for Miller, ("I have read your letter of June 18, 2008 and, being that your position is not well-founded, your demand [for arbitration] is rejected").

Loans moved to dismiss before this Court. Plaintiffs in those cases opposed, arguing that the Terms of Use were unconscionable as a matter of North Carolina law. While the Spinozzi, Mitchell, and Carson cases were pending before this Court, the Plaintiffs in Spinozzi filed a Petition with the Judicial Panel for Multidistrict Litigation. The Spinozzi Plaintiffs, in part, premised their Petition on the need to "avoid conflicting rulings[.]" Exhibit F, p. 4, citing to Manual for Complex Litigation 4th §20.131 (2004).[4] LendingTree and the remaining Plaintiffs supported the Petition, in large part to ensure consistency, although several of the Plaintiffs argued that the appropriate venue should be other than this Court.

While the Petition was pending, this Court issued its ruling in Spinozzi, Carson, and Mitchell. The Court issued a detailed oral ruling on the afternoon of the oral argument on August 21, 2008. The Court denied the Motion to Dismiss, but stayed the Plaintiffs' cases and compelled them to arbitration. LendingTree filed Supplemental Information with the Judicial Panel that this Court had granted the Motion to Stay and Compel in Spinozzi, Mitchell, and Carson. Exhibit H. Thus, the MDL Panel was well aware of this Court's disposition of those three cases while it considered how to proceed with the remaining five cases.

In its subsequent Order, the Judicial Panel on Multidistrict Litigation specifically found that centralization will, *inter alia*, "avoid inconsistent pre-trial rulings," and transferred the Garcia and Miller actions to Your Honor by name. Exhibit I. Subsequently, the Clerk of the Judicial Panel identified Shaver, Bradley, and Bercaw as tag-along actions. The Clerk issued Conditional Transfer Orders requiring these cases to be transferred to this Court, specifically to

---

[4] Thereafter, Plaintiffs in each of the cases wrote to the Judicial Panel to support centralization of the litigation. These respondent Plaintiffs also urged centralization to avoid inconsistent rulings. Exhibit D, Bercaw and Shaver Response, p. 3 (noting the need to "prevent inconsistent pretrial rulings"); Exhibit G, Miller Response, p. 3 (admitting transfer will "prevent potentially inconsistent rulings") and Exhibit C, Garcia and Bradley Response, p.2 (same).

be heard by Your Honor. The time to oppose these Conditional Transfer Orders passed with no opposition. Therefore, these tag-along cases were also transferred to this Court. Exhibit J.

## IV. LEGAL ANALYSIS

### A. Authority for Motion Provided by FAA, Sections 2, 3, and 4

This Motion is brought under Sections 2, 3, and 4 of the Federal Arbitration Act, 9 U.S.C.A. §1, *et seq.* ("**FAA**"). As this Court noted during the August hearing, in the Federal Arbitration Act Congress endorsed arbitration as "a preferred method" of dispute resolution. Exhibit A, T12:15-16.

#### 1. Section 2 of the FAA Mandates Enforcement of Clause

Section 2 of the FAA provides that:

> A written provision in any …contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction…shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.
> [9 U.S.C.A. §2 (emphasis added).]

##### a. Plaintiffs Agreed to the Terms of Use

This Court has already found that by submitting information to LendingTree, the consumer agrees to the Terms of Use. Plaintiffs manifested assent to the Terms of Use "by affirmatively checking the box stating that they had agreed to those terms." T45:15-16. "Plaintiffs, through the objective manifestation of their actions, agree to LendingTree's Terms of Use, including the agreement to arbitrate." T54:25-55:2.

Plaintiffs here, like Spinozzi, Mitchell, and Carson, may claim that they agreed to the Terms of Use but did not read them. Failure to read is no defense to a contract for arbitration. As the Court quoted from Judge Easterbrook, "A contract need not be read to be effective. People who accept take the risk that the unread terms may in retrospect prove unwelcome." Hill v. Gateway, 105 F.3d 1147, 1148 (7th Cir. 1997). T54:20-24.

### b. No Ground Exists to Revoke the Contract to Arbitrate

Plaintiffs here, like Spinozzi, Mitchell, and Carson, may claim that the Terms of Use can be revoked as unconscionable under North Carolina law. Spinozzi, Mitchell, and Carson cited particularly to a recent North Carolina Supreme Court decision, Tillman. Tillman v. Commercial Credit Loans, Inc., 362 N.C. 93, 655 S.E.2d 362 (2008). In its prior ruling, this Court rejected that argument.

The Court noted that for a contract to be rescinded as unconscionable, both procedural and substantive unconscionability must be found. T56:17-19. Under North Carolina law, three factors for procedural unconscionability have been provided: unfair surprise, lack of meaningful choice, and inequality of bargaining power. T 56.

As to this same Terms of Use Agreement, the Court found "no facts indicating unfair surprise." T58:14-15. To the contrary, "plaintiffs were able to peruse LendingTree's website at their leisure." T58:18-20. And, "even a cursory perusal of those terms would have revealed that there was an arbitration clause[.]" T59:15-16. The Court also found no lack of meaningful choice.

While the Court did find that bargaining power was unequal, T58:12-13, this one factor alone did not render the agreement to arbitrate procedurally unconscionable. T59:25-60:2.

The sole facts proffered by Spinozzi, Mitchell, and Carson as supposed evidence of substantive unconscionability were two contractual terms. First, the contract provides that the loser in any litigation pays all counsel fees. Second, the contract prohibits joinder of claims and bringing or participating in a class action. The Court found that these provisions did not render the Terms of Use substantively unconscionable, i.e., "are hardly so oppressive that no reasonable

person would [accept] them on the one hand, and no honest and fair person would [make] them on the other." T61:6-11.

The Terms of Use were not unconscionable as to Spinozzi, Mitchell, and Carson. The Terms of Use are not unconscionable as to the named Plaintiffs now before the Court.

**2. Section 3 of the FAA Mandates a Stay of Judicial Process**

If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.
[9 U.S.C.A. §3 (emphasis added).]

"The court must grant the stay until arbitration is complete once it is satisfied that the issue involved in the suit or proceeding is referable under the arbitration agreement. There are to be no court proceedings on matters subject to the arbitration clause until the arbitration contracted for by the parties is complete. The FAA's stay-of-litigation provision is mandatory and, if issues in the case are within the reach of the arbitration agreement, the district court has no discretion to deny the stay." 3 Fed. Proc., L. Ed. § 4:20, Stay as Remedy, Generally. Accord, U.S. v. Bankers Ins. Co., 245 F.3d 315, 319 (4th Cir. 2001).

**3.     Section 4 of the FAA Authorizes an Enforcement Motion**

A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court…for an order directing that such arbitration proceed in the manner provided for in such agreement….The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement.
[9 U.S.C.A. §4 (emphasis added).]

Because this is not a Motion to Dismiss, the Court is not confined to the four corners of the Complaint, nor required to give Plaintiffs the benefit of every disputed issue. Instead, in the context of motions to compel arbitration brought under § 4, courts apply standard similar to that applicable to motions for summary judgment. Clutts v. Dillard's, Inc., 484 F. Supp. 2d 1222 (D. Kan. 2007). The burden is first on the movant to establish the existence of a contract to arbitrate. If movant presents some evidence of such a contract, its terms will be enforced unless respondent can raise a genuine issue of material fact as to authenticity or application. As long as party's claim of arbitrability is plausible, doubts should be resolved in favor of arbitration. Sharon Steel Corp. v. Jewell Coal & Coke Co., 735 F.2d 775 (3d Cir. 1984).

To state a claim to compel arbitration under the FAA, the movant must allege "(1) the existence of a dispute between the parties, (2) a written agreement that includes an arbitration provision which purports to cover the dispute, (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce, and (4) the failure, neglect or refusal of the [respondent] to arbitrate the dispute." Whiteside v. Teltech Corp., 940 F.2d 99, 102 (4th Cir. 1991)

These five (5) putative class actions, filed all over the country by consumers, are sufficient to show the existence of a dispute, a relationship to commerce, and the refusal to submit to the AAA arbitration required by the Terms of Use. Thusfar, Plaintiffs' counsel has offered no legitimate reason not to enforce the Terms of Use to which each Plaintiff agreed upon submitting information to LendingTree.

## V. CONCLUSION

For all of the above reasons, and for the reasons noted by this Court in staying the Spinozzi, Mitchell, and Carson cases, LendingTree asks that the judicial proceedings against

LendingTree be stayed, and that the individual Plaintiffs in Shaver, Miller, Garcia, Bradley, and Bercaw be compelled to individual (non-class) arbitration in accordance with the Terms of Use.

This 17th day of November, 2008.

Respectfully submitted,

s/ Robert E. Harrington
Robert E. Harrington
N.C. Bar No. 26967
rharrington@rbh.com
Jonathan C. Krisko
N.C. Bar No. 28625
jkrisko@rbh.com

**ROBINSON, BRADSHAW & HINSON, P.A.**
101 North Tryon Street, Suite 1900
Charlotte, North Carolina 28246-1900
Telephone: (704) 377-2536
Facsimile: (704) 378-4000

Mark S. Melodia (admitted *pro hac vice*)
mmelodia@reedsmith.com
Paul J. Bond (admitted *pro hac vice*)
pbond@reedsmith.com

**REED SMITH LLP**
Princeton Forrestal Village
136 Main Street
Princeton, New Jersey 08540
(609) 514-6015

*Attorneys for Defendants*
*Home Loan Center, Inc. d/b/a LendingTree*
*Loans and LendingTree, LLC*

# CERTIFICATE OF COMPLIANCE WITH
# WORD COUNT LIMITATIONS

The undersigned hereby certifies, in accordance with Standing Order No. 3(b)(iv) Governing Civil Case Management Before the Honorable Frank D. Whitney, that this **DEFENDANTS' MEMORANDUM IN SUPPORT OF CONSOLIDATED MOTION TO STAY AND TO COMPEL ARBITRATION PURSUANT TO SECTIONS 3 AND 4 OF THE FEDERAL ARBITRATION ACT** contains 2,684 words, including footnotes and excluding the caption, signature block and this certification, as verified using the Word Count tool in Microsoft Word 2003.

                                        s/ Robert E. Harrington
                                        Robert E. Harrington
                                        N.C. Bar No. 26967
                                        rharrington@rbh.com

**ROBINSON, BRADSHAW & HINSON, P.A.**
101 North Tryon Street, Suite 1900
Charlotte, North Carolina 28246-1900
Telephone: (704) 377-2536
Facsimile: (704) 378-4000

*Attorneys for Defendants*
*Home Loan Center, Inc. d/b/a LendingTree*
*Loans and LendingTree, LLC*

# CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing **DEFENDANTS' MEMORANDUM IN SUPPORT OF CONSOLIDATED MOTION TO STAY AND TO COMPEL ARBITRATION PURSUANT TO SECTIONS 3 AND 4 OF THE FEDERAL ARBITRATION ACT** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

| | |
|---|---|
| Jennie Lee Anderson<br>jennie@libertylaw.com | Jon Jason Lambiras<br>jlambiras@bm.net |
| Lori Erin Andrus<br>lori@libertylaw.com | Micha Star Liberty<br>micha@libertylaw.com |
| Ilan J. Chorowsky<br>ichorowsky@gmail.com | Jason Brant Reynolds<br>jasrey@aol.com |
| Robyn C. Crowther<br>crowther@caldwell-leslie.com | Rosemary M. Rivas<br>rrivas@finkelsteinthompson.com |
| Larry D. Drury<br>ldrurylaw@bm.net | James R. Rowe<br>rowelegal@gmail.com |
| Michael Todd Fantini<br>mfantini@bm.net | Jamie L. Sheller<br>jlsheller@sheller.com |
| Billy D. Griffin<br>oculaw2@aol.com | Gary W. Jackson<br>gjackson@ncadvocates.com |

and I hereby certify that I have mailed the document to the following non CM/ECF participants:

Jeffrey Carlton
1311 Mamaronek Ave.
White Plains, NY 10605

David Molinari
Bremer Whyte Brown & O'Meara LLP
501 West Broadway
Suite 1750
San Diego, CA 92101

Sherrie R. Savett
1622 Locust Street
Philadelphia, PA 19103

This 17th day of November, 2008.

                                                        s/ Robert E. Harrington
                                              Robert E. Harrington
                                              ROBINSON, BRADSHAW & HINSON, P.A.
                                              101 North Tryon Street, Suite 1900
                                              Charlotte, North Carolina 28246-1900
                                              (704) 377-2536
                                              rharrington@rbh.com