**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**

---

IN RE: LENDING TREE, LLC
CUSTOMER DATA BREACH LITIGATION

**Civil Action No.: 3:08-MD-1976**

---

**THE *GARCIA-BRADLEY* PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION**
**TO DEFENDANT HOME LOAN CENTER INC.'S AND**
**LENDINGTREE LLC'S MOTION TO STAY AND TO COMPEL ARBITRATION**

MEISELMAN, DENLEA, PACKMAN, CARTON & EBERZ P.C.
1311 Mamaroneck Avenue
White Plains, New York 10605
Tel: (914) 517-5000
Fax: (914) 517-5055
Attorneys for the *Garcia-Bradley*
Group Plaintiffs

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    A.    LendingTree's Wide-Ranging Security Breach . . . . . . . . . . . . . . . . . . . 3

    B.    The *Garcia-Bradley* Actions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    C.    The Present Motion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

I.    CALIFORNIA LAW CONTROLS AND INVALIDATES THE
ARBITRATION PROVISION AND CLASS ACTION WAIVER . . . . . . . . . . . . . 6

    A.    California's Choice of Law Analysis . . . . . . . . . . . . . . . . . . . . . . . 7

    B.    The Class Action Waiver Is Unconscionable and
Violates a Fundamental Policy of California Law . . . . . . . . . . . . 8

        1.    The LendingTree Contract is a Contract of Adhesion . . . . 9
        2.    Plaintiff's Individual Damages Are Small . . . . . . . . . . . . 10
        3.    LendingTree Perpetrated a Scheme . . . . . . . . . . . . . . . . 10

    C.    The LendingTree Arbitration Provision Contains
Additional Hallmarks of Unconscionability . . . . . . . . . . . . . . . . 11

    D.    California's Interest Outweighs North Carolina's . . . . . . . . . . . 12

II.    PLAINTIFFS SHOULD HAVE THE OPPORTUNITY TO CONDUCT
DISCOVERY ON THE ISSUE OF UNCONSCIONABILITY . . . . . . . . . . . . . . 13

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

# TABLE OF AUTHORITIES

**Cases**                                                                                          **Page**

*America Online v. Superior Court,*
90 Cal.App.4th 1, 108 Cal.Rptr.2d 699 (Cal. Ct. App. 2001) . . . . . . . . . . . . . . . . . . . . 8

*Brazil v. Dell Inc.,*
No. C-07 -1770, 2007 WL 2255296 (N.D.Cal. Aug. 3, 2007) . . . . . . . . . . . . . . . . . . 11

*Brennan v. Bally Total Fitness,*
153 F.Supp.2d 408 (S.D.N.Y. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Cohen v. DirecTV, Inc.,*
142 Cal.App.4th 1442, 48 Cal.Rptr.3d 813 (2006) . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Davis v. Chase Bank USA, N.A.,*
No. 07-55561, 2008 WL 4832998 (9th Cir. Nov. 3, 2008) . . . . . . . . . . . . . . . . . . . . . 13

*Discover Bank v. Superior Court,*
36 Cal.4th 148, 113 P.3d 1100, 30 Cal.Rptr.3d 76 (2005) . . . . . . . . . . . . . . . . . . . . . 9

*Doctor's Assoc., Inc. v. Casarotto,*
517 U.S. 681 (1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Douglas v. U.S. Dist. Ct. for the Central Dist. of Cal.,*
495 F.3d 1062 (9th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 12

*Dunlap v. Green Tree Servicing, LLC,*
No. Civ.A. 2:05-0311, 2005 WL 3178593 (S.D.W. Va. Nov. 28, 2005) . . . . . . . . . . . 14

*Hoffman v. Citibank (South Dakota), N.A.,*
__ F.3d __, 2008 WL 4554925 (9th Cir. Oct. 14, 2008) . . . . . . . . . . . . . . . . . . . . . . . 7, 8

*Hopkins v. Newday Financial, LLC,*
Civ. No. 07-3679, 2008 WL 4657822 (E.D. Pa. Oct. 17, 2008) . . . . . . . . . . . . . . . . . 14

*Ingle v. Circuit City Stores, Inc.,*
328 F.3d 1165 (9th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Jackson v. Am. Gen. Fin. Serv.,*
Civ. A. No. 7:06-cv-76, 2007 WL 1231671 (M.D. Ga. Apr. 26, 2007) . . . . . . . . . . . . 14

*Klussman v. Cross Country Bank,*
134 Cal.App.4th 1283, 36 Cal.Rptr.3d 728 (Cal. Ct. App. 2005) . . . . . . . . . . . . . . 8, 13

*Kucan v. Advance America*,
660 S.E.2d 98 (N.C. App. Ct. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Murphy v. Check 'N Go of Calif., Inc.*,
156 Cal.App.4th 138, 67 Cal.Rptr.3d 120 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Nagrampa v. MailCoups, Inc.*,
469 F.3d 1257 (9th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Nedlloyd Lines B.V. v. Superior Court*,
834 P.2d 1148 (Cal. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Oestricher v. Alienware Corp.*,
502 F.Supp.2d 1061 (N.D. Cal. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Shroyer v. New Cingular Wireless Services, Inc.*,
498 F.3d 976 (9th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 9, 10, 12

*Terminix Int'l Co. v. Crisel*,
No. 05-1065, 2008 WL 4831755 (W.D. Ark. Nov. 3, 2008) . . . . . . . . . . . . . . . . . . . 14

*Tillman v. Commercial Credit Loans, Inc.*,
362 N.C. 93, 655 S.E.2d 362 (2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 16, 17

*Ting v. AT&T*,
319 F.3d 1126 (9th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 10, 11, 12

*Toll Bros., Inc. v. Dryvit Sys., Inc.*,
432 F.3d 564, 568 (4th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7

*Toppings v. Meritech Mortgage Serv., Inc.*,
140 F.Supp.2d 683 (S.D. W.Va. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

## Statutes

9 U.S.C. §2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

15 U.S.C. §§ 1681 et seq. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

## Rules

Fed.R.Civ.P. 26 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Plaintiffs in the actions titled *Garcia v. LendingTree LLC et al.*, 3:08-cv-2078, and *Bradley et al. v. LendingTree LLC et al.*, 3:08-cv-2080, on behalf of themselves and others similarly situated (collectively, the "*Garcia-Bradley* Plaintiffs") respectfully submit this memorandum of law in opposition to Defendant Home Loan Center Inc.'s and LendingTree LLC's (collectively, "LendingTree") Consolidated Motion to Stay and to Compel Arbitration Pursuant to Sections 3 and 4 of the Federal Arbitration Act.

## PRELIMINARY STATEMENT

Plaintiffs entrusted LendingTree with valuable information – confidential data, including Social Security numbers, income, employment, home and email addresses and telephone numbers. Like most Americans, plaintiffs safeguard this data and release it sparingly to only trusted sources. Despite LendingTree's assurances that its website is "privacy and security protected," starting in at least 2006, LendingTree breached its obligations when its employees assisted unauthorized entities in accessing Plaintiffs' confidential data. LendingTree's breach exposed its customers to identity theft and has negatively impacted Plaintiffs' credit scores. Adding insult to injury, LendingTree exhorted its customers to monitor their credit reports and to notify the major credit reporting agencies of potential fraud *at the customer's own expense*.

LendingTree now seeks to compel plaintiffs to arbitrate their claims based on a one-sided provision in the standardized "terms of use" prepared by LendingTree and which plaintiffs had no opportunity to negotiate. Not only does LendingTree's arbitration provision purport to preclude class actions, but it also has a cost-shifting mechanism whereby the consumer potentially bears the risk of having to pay both its own and Lending Tree's attorneys' fees, as well as a portion of the arbitration costs.

For consumers like Plaintiffs, who have limited financial resources, these one-sided terms effectively deprive them of any venue in which to vindicate their rights.

Because the *Garcia-Bradley* Plaintiffs commenced suit in California, the Court is constrained to apply California law to determine whether the arbitration provision is enforceable. Indeed, California has a well-settled "fundamental" policy against arbitration provisions with class action waivers and the California courts routinely invalidate such agreements. Thus, following the mandates of California law, the Court should invalidate the arbitration agreement.

Not surprisingly, LendingTree makes no reference whatsoever to California law, but instead relies on this Court's oral order in other actions.[1] However, there was no dispute that North Carolina law applied to the Court's prior decision. Moreover, the Court's earlier decision was based on a limited factual record and the parties did not seek discovery. Unlike the paucity of facts proffered in *Spinozzi*, here the *Garcia-Bradley* Plaintiffs have put forth evidence that the Court found lacking on the prior motion, specifically evidence of their limited financial resources and the oppressive nature of the arbitration agreement. This evidence amply supports a finding of unconscionability. Nevertheless, in the event the Court should conclude otherwise (which it should not), the *Garcia-Bradley* Plaintiffs respectfully request in the alternative that the Court allow them to seek limited discovery from LendingTree on the issue of unconscionability.

_____

[1]Specifically, Defendants reference the Court's oral order in *Spinozzi v. LendingTree, LLC et al.*, 3:08-cv-229 (W.D.N.C. Aug. 21, 2008) (hereinafter "*Spinozzi*").

2

## BACKGROUND

**A.    LendingTree's Wide-Ranging Security Breach**

LendingTree regularly engages in the practice of assembling or evaluating

consumer credit information for the purpose of furnishing this information to third

parties. *Garcia* Compl. ¶16; *Bradley* Compl. ¶19.  LendingTree allows consumers to

submit customer loan request forms and then permits consumers to choose from

competitive loan offers from various lenders. *Garcia* Compl. ¶17; *Bradley* Compl. ¶20.

The *Garcia-Bradley* Plaintiffs each opened an account with LendingTree through

the internet.  *See* Exhibits A-D (Declarations of the *Garcia-Bradley* Plaintiffs).  In doing

so, plaintiffs were required to consent to LendingTree's "terms of use," which they had

no ability to negotiate.  LendingTree's website touts that it is "privacy and security

protected," Def. Mot. at 3, and LendingTree's loan forms request confidential data such

as name, address, email address, telephone number, Social Security number, income

and employment information. *Garcia* Compl. ¶1; *Bradley* Compl. ¶1.

Despite LendingTree's assurances of privacy, in April 2008, LendingTree publicly

announced a wide-reaching security breach that left millions of its customers exposed

to fraud. *Garcia* Compl. ¶18; *Bradley* Compl. ¶22.  By LendingTree's own admission,

its employees allowed various unauthorized mortgage lenders to gain access to

LendingTree customers' personal data by sharing confidential passwords with the

lenders. *Garcia* Compl. ¶20; *Bradley* Compl. ¶24.   In fact, Plaintiffs' confidential

personal data was sold to entities outside the LendingTree network. *Garcia* Compl.

¶¶22-24; *Bradley* Compl. ¶¶25-27.

3

Following its three-year delay in detecting its own employees' security breach, LendingTree has urged its customers – *at their own expense*– to monitor their credit reports for identity theft or other fraudulent financial activity. *Garcia* Compl. ¶¶29-30; *Bradley* Compl. ¶¶32-33. LendingTree also has urged its customers to file fraud alerts with the three main credit reporting bureaus – also at the customers' own expense. *Garcia* Compl. ¶30; *Bradley* Compl. ¶33. When the *Garcia-Bradley* Plaintiffs obtained copies of their credit reports, they were shocked to see that their reports had been pulled for review by various lenders, which has negatively affected their credit scores and caused them harm. *Garcia* Compl. ¶32; *Bradley* Compl. ¶35.

**B.    The *Garcia-Bradley* Actions**

To redress the harm inflicted upon them by LendingTree and others, the *Garcia-Bradley* Plaintiffs commenced class action lawsuits in the United States District Court for the Central District of California. In addition to LendingTree, the *Garcia-Bradley* Plaintiffs named as defendants Newport Lending Corp., Southern California Marketing Corp., Home Loan Consultants, Inc., Chapman Capital, Inc. and Sage Credit Co. (collectively, the "Mortgage Lenders"). All defendants have principal places of business in California. In their complaints, the *Garcia-Bradley* Plaintiffs asserted claims for violations of the Fair Credit Reporting Act, 15 U.S.C. §§ 1681 et seq. ("FCRA"), California Business and Professions Code, and California common law.

Following an order by the Judicial Panel on Multi-District Litigation, the *Garcia-Bradley* actions were transferred to this Court on November 7, 2008.

4

## C.  **The Present Motion**

On November 17, 2008, LendingTree moved to stay the actions pending before

the Court and compel arbitration.  LendingTree bases its motion on a provision

contained in an eight-page, single-spaced, standardized form printed in minuscule

typeface, which contains "terms of use" for the LendingTree website.  Paragraph 14 of

LendingTree's "terms of use" provides in part:

> Any claim or controversy arising out of or relating . . . to any acts or
> omissions for which you may contend LendingTree is liable, including but
> not limited to any claim or controversy as to arbitrability ("Dispute") shall
> be finally and exclusively settled by arbitration. . . . The arbitration shall be
> venued in Mecklenburg County, North Carolina . . . .  LendingTree will pay
> the filing fee plus the costs associated with the first day of arbitration, with
> the remaining costs of arbitration paid by the non-prevailing party. . . .

> [N]o arbitration under this Agreement shall be joined to an arbitration involving
> any other party subject to this Agreement, whether through class arbitration
> proceedings or otherwise. . . .

> YOU ALSO GIVE UP YOUR RIGHT TO PARTICIPATE IN OR BRING
> CLASS ACTIONS . . . .

> If any party employs attorneys to enforce any right in connection with any
> Dispute or lawsuit, the prevailing party shall be entitled to recover
> reasonable attorneys' fees.

Def. Mot. Ex. B.  LendingTree admits that Plaintiffs could not access defendants'

services without consenting to these "terms of use."  Def. Mot. at 2.

Plaintiffs – who each accessed LendingTree's services to obtain financing–

cannot afford the costs of arbitration.  The monetary recovery sought by plaintiffs

individually is modest, yet the costs associated with arbitration are prohibitively

expensive.  Plaintiffs cannot afford to hire an attorney to be paid on an hourly basis.

*See* Exhibits A-D.  The only way they can vindicate their rights is through entering into a

5

class action contingency fee arrangement with counsel willing to advance the costs of litigation. *Id.* Nor do the amounts at issue warrant an attorney bringing an individual arbitration on a contingency fee basis. Indeed, the risk of having to pay LendingTree's attorneys' fees and a portion of the arbitration costs, however slight that risk may be, poses a significant barrier to pursuing claims through arbitration. *Id.* In light of plaintiffs' limited financial resources and the cost-shifting mechanisms of the LendingTree Agreements, arbitration is simply cost prohibitive. *Id.*

## ARGUMENT

## I. CALIFORNIA LAW CONTROLS AND INVALIDATES THE ARBITRATION PROVISION AND CLASS ACTION WAIVER

"Under the Federal Arbitration Act ("FAA"), 9 U.S.C. §2, 'arbitration agreements . . . are subject to all defenses to enforcement that apply to contracts generally.'" *Douglas v. U.S. Dist. Ct. for the Central Dist. of Cal.*, 495 F.3d 1062, 1067 n.2 (9th Cir. 2007) (quoting *Ingle v. Circuit City Stores, Inc.*, 328 F.3d 1165, 1170 (9th Cir. 2003)). "[G]enerally applicable contract defenses, such as . . . unconscionability, may be applied to invalidate arbitration agreements without contravening § 2 [of the FAA]." *Doctor's Assoc., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996). "Thus, to evaluate the validity of an arbitration agreement, federal courts should apply ordinary state-law principles that govern the formation of contracts." *Douglas*, 495 F.3d at 1067 n.2 (internal quotations omitted).

In a multidistrict litigation case, "[w]hen considering questions of state law, . . . the transferee court must apply the state law that would have been applied to the individual cases had they not been transferred for consolidation." *Toll Bros., Inc. v.*

6

*Dryvit Sys., Inc.*, 432 F.3d 564, 568 n. 4 (4ᵗʰ Cir. 2005) (internal quotation omitted). Because the *Garcia* and *Bradley* actions were transferred from the United States District Court for the Central District of California, this Court must apply California law, including its choice of law analysis, to the state law issue of whether LendingTree's arbitration agreement is unconscionable. *See Hoffman v. Citibank (South Dakota), N.A.*, __ F.3d __, 2008 WL 4554925, at *3 (9ᵗʰ Cir. Oct. 14, 2008) ("The applicable state law controls whether an arbitration agreement is unconscionable and, therefore, unenforceable."); *see also Shroyer v. New Cingular Wireless Services, Inc.*, 498 F.3d 976, 987 (9ᵗʰ Cir. 2007); *Ting v. AT&T*, 319 F.3d 1126, 1150 n. 15 (9ᵗʰ Cir. 2003).

## A. California's Choice of Law Analysis

The LendingTree agreement states that North Carolina law applies. Def. Mot. Ex. B. Nevertheless, the Court must apply California choice of law analysis to determine whether it will enforce the law specified. *Hoffman*, 2008 WL 4554925, at *3. In *Hoffman*, the United States Court of Appeals for the Ninth Circuit reversed and remanded a California district court that applied the law specified in a consumer contract without fully performing a California choice of law analysis.

"The California Supreme Court has held that under California's choice of law analysis, a court must determine as a threshold matter 'whether the chosen state has a substantial relationship to the parties or their transaction, or . . . whether there is any other reasonable basis for the parties' choice of law." *Hoffman*, 2008 WL 4554925, at *3 (quoting *Nedlloyd Lines B.V. v. Superior Court*, 834 P.2d 1148, 1152 (Cal. 1992)) (alternation in original). If either of these tests are met, the Court must determine

7

"whether the 'chosen state's law is contrary to a *fundamental* policy of California." *Id.* (emphasis in original). "If such a conflict with California law is found, 'the court must then determine whether California has a materially greater interest than the chosen state in the determination of the particular issue." *Id.*

As explained below, California has a deeply-rooted policy of protecting consumers from contracts of adhesion containing class action waivers like the one at issue here. Under well-settled principles of California law, the LendingTree arbitration agreement is unconscionable. By contrast, based upon the limited factual record before it, this Court has already determined that the arbitration clause at issue is enforceable as a matter of North Carolina law. Def. Mot. Ex. A (Tr. at 60-61). Under these circumstances, California law applies because the interests of California, where the wrongful acts occurred and where all Defendants are present, outweighs that of North Carolina.

## B.   The Class Action Waiver Is Unconscionable and Violates a Fundamental Policy of California Law

As recognized by the Ninth Circuit, "California has a fundamental policy against unconscionable class arbitration waivers." *Hoffman*, 2008 WL 4554925, at *4. Indeed, "the right to seek class action relief in consumer cases has been extolled by California courts." *America Online v. Superior Court*, 90 Cal.App.4th 1, 17, 108 Cal.Rptr.2d 699, 712 (Cal. Ct. App. 2001). Thus, "[c]ourts in California have not hesitated to invalidate class action waivers . . . ." *Klussman v. Cross Country Bank*, 134 Cal.App.4th 1283, 1293, 36 Cal.Rptr.3d 728, 735 (Cal. Ct. App. 2005) (citing cases).

8

In determining whether a class action waiver in a consumer contract is unconscionable, California courts perform a three-part inquiry:

> (1) whether the agreement is a consumer contract of adhesion drafted by a party that has superior bargaining power; (2) whether the agreement occurs in a setting in which disputes between the contracting parties predictably involve small amounts of damages; and (3) whether it is alleged that the party with the superior bargaining power has carried out a scheme to deliberately cheat a large number of consumers out of individually small sums of money.[2]

*Shroyer*, 498 F.3d at 983 (internal quotations omitted). The California Supreme Court has reasoned that, when these factors are met, class action waivers "operate effectively as exculpatory contract clauses that are contrary to public policy" because consumers cannot realistically pursue any remedies. *Discover Bank v. Superior Court*, 36 Cal.4th 148, 161, 113 P.3d 1100, 1109, 30 Cal.Rptr.3d 76, 87 (2005). Application of these factors requires invalidation of the class action waiver here.

## 1. The LendingTree Contract is a Contract of Adhesion

"Under California law, 'a contract of adhesion is defined as a standardized contract, imposed upon the subscribing party without an opportunity to negotiate the terms.'" *Id.* (quoting *Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257, 1281 (9th Cir. 2006)) (other quotations omitted). This Court has already held that "[b]argaining power here was undoubtedly unequal as the plaintiffs had no ability to negotiate the terms of use with LendingTree." Def. Mot. Ex. A (Tr. at 58). Under California law, this Court's finding

---

[2]California courts invalidate contract provisions only if they are both procedurally and substantively unconscionable. *Shroyer*, 498 F.3d at 981. "But the two types of unsconscionability need not both be present in the same degree. California courts apply a 'sliding scale' so that the more oppressive the contract term, the less evidence of procedural unconsionability is required to come to the conclusion that the term is unenforceable, and vice versa." *Id.* at 981-82 (internal quotations omitted).

9

mandates a conclusion that the LendingTree contract is a contract of adhesion. *See Shroyer*, 498 F.3d at 983; *Ting*, 319 F.3d at 1148 ("A contract is procedurally unconscionable if it is a contract of adhesion, *i.e.*, a standardized contract, drafted by the party of superior bargaining strength, that relegates to the subscribing party only the opportunity to adhere to the contract or reject it.").

## 2. Plaintiff's Individual Damages Are Small

The *Garcia-Bradley* Plaintiffs seek compensatory damages, including but not limited to, "the time and funds spent, and which will continue to be spent, to monitor financial accounts and credit history for fraudulent activity" along with statutory damages and cost of suit. Garcia Compl. ¶4; Bradley Compl. ¶4. Services that monitor credit scores charge fees of between approximately $11 to $15 per month. And statutory fines range from $100 to $1000 per violation. While this is "'not an insignificant sum[] many consumers . . . may not view that amount as sufficient to warrant individual litigation, and certainly it is not sufficient to obtain legal assistance in prosecuting the claim.'" *Oestricher v. Alienware Corp.*, 502 F.Supp.2d 1061, 1068 (N.D. Cal. 2007) (holding that individual damages equaling at least $4,000 were "small" and quoting *Cohen v. DirecTV, Inc.*, 142 Cal.App.4th 1442, 1452, 48 Cal.Rptr.3d 813 (2006)) (alteration in original).

## 3. LendingTree Perpetrated a Scheme

The Complaints allege that Plaintiffs' confidential information has been unlawfully disclosed and sold to the Mortgage Lenders by LendingTree employees. *Garcia* Compl. ¶ 34; *Bradley* Compl. ¶38. As a result of LendingTree's breaches, its

10

customers' confidential information has been exposed for almost three years and these consumers have been at risk for identity theft and credit report fraud. Indeed, the *Garcia-Bradley* Group Plaintiffs obtained credit reports at their own expense and "were shocked to learn that their credit reports had been pulled for review by several lenders without their permission, severely effecting their credit scores and causing them damage." *Garcia* Compl. ¶ 32; *Bradley* Compl. ¶37. Taken together, these allegations establish that Defendants "carried out a scheme to cheat a large number of consumers." *Brazil v. Dell Inc.*, No. C-07–1770, 2007 WL 2255296, at \*6 (N.D.Cal. Aug. 3, 2007).

### C. The LendingTree Arbitration Provision Contains Additional Hallmarks of Unconscionability

In addition to the impermissible class action waiver, the LendingTree arbitration agreement is replete with terms that California courts have recognized as unconscionable.

*First*, the LendingTree arbitration provision lacks mutuality. The arbitration provision applies only to "any acts or omissions for which **you** may contend LendingTree is liable." Def. Motion Ex. B (emphasis added). By its terms, the provision does not compel LendingTree to arbitrate grievances with its customers. On that basis alone, the arbitration provision is void. *Ting*, 319 F.3d at 1150 ("bilaterality is a requirement in all California arbitration agreements"). Even if the LendingTree arbitration provision could be construed as mutual, "courts assessing California law look beyond facial neutrality and examine the actual effect of the challenged provision." *Id.* at 1149. In a consumer contract setting, class action waivers lack bilaterality because

11

corporations "do not sue their customers in class-action lawsuits." *Id.; Murphy v. Check 'N Go of Calif., Inc.*, 156 Cal.App.4th 138, 147, 67 Cal.Rptr.3d 120, 127. Accordingly, the lack of bilaterality here renders the contract substantively unconscionable.

*Second*, the LendingTree arbitration agreement deters consumers from pursuing their rights through arbitration because it contains a "loser pays" provision requiring the non-prevailing party to pay each sides' attorneys' fees and the costs of arbitration following the first day. Def. Mot. Ex. B. Given these financial disincentives, consumers are unlikely to commence individual arbitrations. Under California law, these provisions are unenforceable because they impose on consumers greater costs than pursuing a claim in court. *See Ting*, 319 F.3d at 1151; *Shroyer*, 498 F.3d at 986.

*Finally*, LendingTree's claim that the existence of competitors provided consumers with a meaningful choice is irrelevant under California law. *See* Def. Mot. Ex. A (Tr. at 59). The Ninth Circuit has "consistently followed the courts that reject the notion that the existence of 'marketplace alternatives' bars a finding of procedural unconsionability.'" *Shroyer*, 498 F.3d at 985.

### D.   California's Interest Outweighs North Carolina's

Because the arbitration agreement is unconscionable, and thus unenforceable under California law, the Court must consider California's interest in the litigation. "To determine which state has the materially greater interest, [California courts] look to the domicile of the parties and the place of the wrong." *Douglas*, 495 F.3d at 1067 n.2.

Here, California has the greatest interest because (1) the defendants are all California residents, (2) the loan applications at issue were processed in California and

12

(3) the breach of Lending Tree's customers' confidential data occurred in California by California residents, and (4) was disseminated by persons and companies based in California. Indeed, when LendingTree asserted claims against the Mortgage Lenders relating to their access to plaintiffs' confidential data, it brought suit in California state court and invoked California law. Exhibit E. In its complaint, LendingTree averred that it is doing business in Orange County, California and that the wrongful conduct occurred in California.[3] *Id.*

Having invoked California law concerning access to Plaintiffs' confidential data, LendingTree cannot complain that application of California law is unfair here. Moreover, the *Garcia-Bradley* Complaints allege violations of California common and statutory law. These factors all favor application of California law. *See, e.g., Davis v. Chase Bank USA, N.A.*, No. 07-55561, 2008 WL 4832998, at *1 (9th Cir. Nov. 3, 2008) (invalidating Delaware choice of law provision in consumer contract); *Klussman*, 134 Cal.App.4th at 1299-1300.

## II. PLAINTIFFS SHOULD HAVE THE OPPORTUNITY TO CONDUCT DISCOVERY ON THE ISSUE OF UNCONSCIONABILITY

For the reasons set forth above, the arbitration provision is invalid as a matter of law under well-established California precedent. Alternatively, however, the plaintiffs should be permitted to conduct limited discovery to develop a fuller factual record demonstrating that the LendingTree agreement is unconscionable.

---

[3]LendingTree's corporate headquarters in Irvine, California is three times as large as, and employs nearly three times as many employees as, its offices in Charlotte, North Carolina.

Courts routinely permit the parties to engage in limited discovery to determine whether an arbitration provision is invalid. *Toppings v. Meritech Mortgage Serv., Inc.*, 140 F.Supp.2d 683, 685 (S.D. W.Va. 2001) ("In order to discharge its obligation to assure there is a valid arbitration agreement, the Court agrees discovery is necessary . . . . [A]ddditional factual development is warranted particularly, without limitation, on . . . the issues of unconscionability . . . .");*Terminix Int'l Co. v. Crisel*, No. 05-1065, 2008 WL 4831755 at *3 (W.D. Ark. Nov. 3, 2008) (granting motion for reconsideration of order compelling arbitration because "the Court should have allowed the Crisels to conduct discovery on [the unconscionability] issues before it issued its order compelling arbitration"); *Hopkins v. Newday Financial, LLC*, Civ. No. 07-3679, 2008 WL 4657822, at *1 (E.D. Pa. Oct. 17, 2008) (noting that the court denied the motion to compel arbitration without prejudice to allow for limited discovery); *Dunlap v. Green Tree Servicing, LLC*, No. Civ.A. 2:05-0311, 2005 WL 3178593 (S.D.W. Va. Nov. 28, 2005) ("plaintiffs should be afforded the opportunity to conduct limited discovery on their claim the arbitration agreement is unconscionable"). Until limited discovery is complete, courts often deny motions to compel arbitration. *Brennan v. Bally Total Fitness*, 153 F.Supp.2d 408, 416 (S.D.N.Y. 2001) (denying motion to compel arbitration pending discovery); *Jackson v. Am. Gen. Fin. Serv.*, Civ. A. No. 7:06-cv-76, 2007 WL 1231671 at *4 (M.D. Ga. Apr. 26, 2007) (denying motion to compel arbitration with leave to re-file after discovery).

The coordinated actions pending before the Court are in the earliest stages. This court received the *Garcia* and *Bradley* actions from the Central District of California

14

on November 7, 2008. Defendants filed the pending motion to compel arbitration on November 17, 2008. No scheduling order has been issued. No initial disclosures have been exchanged. No conference has been held pursuant to Federal Rule of Civil Procedure 26(f). Thus, without a Court order, the parties cannot seek discovery. Fed.R.Civ.P. 26(d).

On the pending motion, the *Garcia-Bradley* Plaintiffs have provided declarations evidencing their inability to pay for arbitration and the deterrent effects of the "loser pays" requirements of the arbitration agreement. *See* Exhibits A-D. To the extent that information relevant to the unconscionability determination is not in Plaintiffs' control, Plaintiffs should be afforded the opportunity to obtain discovery. *See, e.g., Tillman v. Commercial Credit Loans, Inc.*, 362 N.C. 93, 101, 655 S.E.2d 362, 369 (2008) (noting that depositions of defendant's representatives provided evidence of unconscionability). To that end, the *Garcia-Bradley* Plaintiffs are prepared to propound initial discovery requests to LendingTree concerning unconscionability. *See* Exhibits F & G.

Allowing discovery is consistent with the North Carolina Supreme Court's decision in *Tillman v. Commercial Credit Loans, Inc.*, 362 N.C. 93, 655 S.E.2d 362 (2008).[4] In *Tillman*, the court concluded that an arbitration agreement in a consumer contract was unconscionable and unenforceable because "the provisions do not provide plaintiffs with a forum in which they can effectively vindicate their rights." *Id.* at

---

[4]As discussed in Part I, *supra*, California law controls the validity of the arbitration provision here. Nevertheless, based on the factual record presented on this motion, the arbitration provision is also invalid under North Carolina law as set forth in *Tillman*.

108, 655 S.E.2d at 373. Indeed, the *Tillman* court based its holding on a factual record that included depositions of the defendant's employees.

Many of the factors significant to the *Tillman* court's finding of unconscionability are present here. For example, "the bargaining power between defendants and plaintiffs was unquestionably unequal in that the plaintiffs are relatively unsophisticated consumers contracting with corporate defendants who drafted the arbitration clause and included it as boilerplate in all of their loan agreements." *Id.* at 103, 655 S.E.2d at 370. The plaintiffs have "limited financial means." *Id.* at 104, 655 S.E.2d at 371. The "loser pays" provision provides a barrier to pursuing arbitration. *Id.* at 106, 655 S.E.2d at 372. The prohibitions on joinder and class actions "contribute to the inaccessibility of the arbitral forum . . . [and] contributes to the one-sidedness of the clause because the right to join claims and pursue class actions would benefit only borrowers." *Id.* at 108, 655 S.E.2d at 373.

In granting LendingTree's motion to compel arbitration in the *Spinozzi* action, the Court applied the North Carolina Supreme Court's decision in *Tillman*.[5] In *Spinozzi*, the Court emphasized the limited factual record, noting that "[P]laintiffs have provided no evidence concerning their inability to afford arbitration." Def. Mot. Ex. A (Tr. at 60). The Court further noted that "plaintiffs have not provided facts that Lending Tree is getting round the arbitration agreement." *Id.* And, the Court found that "plaintiffs also have failed to present evidence of the one-sidedness" of the arbitration provision. *Id.* Thus,

---

[5]The *Spinozzi* action was brought initially in the Western District of North Carolina and thus the California law issues were not before the Court.

16

on the limited record before it, the Court concluded that the arbitration provision was enforceable. *Id.* at 61.

Given the substantial evidence of unconscionability presented on the instant motion, equity requires that Plaintiffs should be allowed to further supplement the record with information in Defendants' control. *See, e.g., Kucan v. Advance America*, 660 S.E.2d 98, 104 (N.C. App. Ct. 2008) (remanding case to trial court post-discovery to examine *facts* in light of Tillman). Thus, in the event the Court does not invalidate the arbitration provision on the present record before it, leave to conduct limited discovery of Defendants should be granted.

17

## CONCLUSION

For the foregoing reasons, the Court should deny Defendants' motion and grant

such other and further relief as it deems proper.

Dated:     White Plains, New York
           December 12, 2008

Respectfully submitted,

MEISELMAN, DENLEA, PACKMAN,
CARTON & EBERZ P.C.

By:

Jeffrey I. Carton
Jerome Noll
Christine M. Ford
1311 Mamaroneck Avenue
White Plains, New York 10605
Tel: (914) 517-5000
Fax: (914) 517-5055
Attorneys for the *Garcia-Bradley* Plaintiffs

00213563.WPD

18