**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**

IN RE LENDINGTREE, LLC CUSTOMER          Civil Action No: 3:08-MD-1976

DATA SECURITY BREACH
LITIGATION

_____

AMY BERCAW, RUSSELL WINSETT, and
TY WOODS, on behalf of themselves and all
others similarly situated,

                    Plaintiffs,

v.                                                        Case No. AC V08-660 CJC (ANx)

LENDINGTREE, LLC, A Delaware limited
liability company, NEWPORT LENDING
CROP., a Nevada corporation, SAGE
CREDIT CO., a Delaware corporation,
HOME LOAN CONSULTANTS, INC., a
California corporation, CHAPMAN
CAPITAL, INC., a California corporation,
and SOUTHERN CALIFORNIA
MARKETING CORP., a California
corporation.

                    Defendants.

_____

EUGENE MILLER, JR. on behalf of himself
and all others similarly situated,

                    Plaintiffs,

v.                                                        Case No. 08cv2300 LCW

LENDING TREE, LLC,
A North Carolina Limited Liability
Corporation.

                    Defendants.

_____

PAUL SHAVER, on behalf of himself and all
others similarly situated,

                       Plaintiffs,                Case No. SACV08-756 JVS (ANx)

v.

LENDINGTREE, LLC, a Delaware limited
liability company, NEWPORT LENDING
CORP., a California corporation, SAGE
CREDIT CO., a California corporation,
HOME LOAN CONSULTANTS, INC., a
California corporation, CHAPMAN
CAPITAL, INC., a California corporation,
and SOUTNERN CALIFORNIA
MARKETING CORP., a California
corporation.

                       Defendants.
_____


### THE BERCAW-MILLER-SHAVER GROUP PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT HOME LOAN CENTER INC.'S AND LENDINGTREE LLC'S MOTION TO STAY <u>AND TO COMPEL ARBITRATION</u>

## SUMMARY OF ARGUMENT

Defendant LendingTree LLC's Motion to Stay and Compel Arbitration wrongly assumes without discussion that the arbitration and North Carolina choice of law provisions it relies on are valid and enforceable.[1] Its assumptions are wrong. As these cases were transferred to this Court from the Central District of California and the Northern District of Illinois by the Judicial Panel on Multidistrict Litigation, Plaintiffs establish in Part I of this brief that this Court presides as a California court for *Bercaw* and *Shaver*, and an Illinois court for *Miller*. In Part II of this brief, Plaintiffs show that Defendant's choice of law provision is unenforceable because it would violate California's public policy. Plaintiffs also show in Part II that under the applicable California law the arbitration agreement is unconscionable. Similarly, in Part III it is established that both the governing law provision and the arbitration agreement are unconscionable under Illinois law. Part IV argues that if this Court chooses to apply North Carolina law, the arbitration agreement is unconscionable.[2] Part V contends that the interdependent aspects of the arbitration provision should not be severed. Finally, in Part VI, Plaintiffs argue if this court disagrees with any of the Plaintiffs' previous arguments, the proper ruling is not to grant arbitration but to grant Plaintiff discovery to further demonstrate to this court the validity of its arguments.

---

[1] Section 14 of LendingTree's Terms of Use will hereinafter be referred to as the arbitration provision. *See Def. Mot. Ex. B.* (*hereinafter* "Terms"). Section 15 of the Terms of Use will be referred to as the choice of law provision. *See id.*

[2] Plaintiffs' Counsel is aware of Your Honor's ruling in *Spinozzi* on August 21, 2008, in which Defendant's arbitration agreement was found not to be unconscionable under Tillman. However, we respectfully submit that the opposite conclusion should have been reached because of the inadequate factual record, which is now cured (or can be with limited discovery). Additionally, here, North Carolina law should not be applied to Plaintiffs' claims, wherein Spinozzi that was not a consideration.

## FACTUAL BACKGROUND

### The Claims

This action arises out of the intentional and illegal distribution of the personal information belonging to Plaintiffs Bercaw, Woods, Miller, and Shaver by LendingTree LLC's employees, representatives, and/or agents (*hereinafter* "Defendant") to Newport Lending Corp.; Southern California Marketing Corp.; Home Loan Consultants, Inc.; Chapman Capital, Inc.; and Sage Credit Co. ("Mortgage Lender Defendants"). All Defendants are California entities.

On April 21, 2008, Defendant publicly announced that several of its employees provided Mortgage Lender Defendants with unauthorized access to its loan qualification forms without the consent of Plaintiffs and Class members in exchange for payments. Bercaw Compl. ¶29. The forms contained Plaintiffs' and Class members' names, addresses, email addresses, telephone numbers, Social Security numbers, income and employment information. *Id.* at ¶31. As a result of the Defendant's employees, representatives, and/or agent's actions, Plaintiffs' personal information was unlawfully compromised to a number of unauthorized parties. Accordingly Plaintiffs brought suit against all Defendants for violations of the Fair Credit Reporting Act, as well as state consumer fraud and common law claims. *See id.* at ¶52-139.

The present motion concerns the Terms of Use posted on Defendant's website. *See* Terms. Plaintiffs each requested mortgage quotes through Defendant's website. *See* Bercaw Compl. ¶23-27; Shaver Compl. ¶21-22. Defendant avers, without offer of proof, that each Plaintiff was prompted to agree and accept a copy of the website's Terms and

did so.[3]  Def. Mot. at 2 and Norton Decl.  Norton claims that each of the Plaintiffs had to

have agreed to the Terms, which depending on the date the website was accessed, was

either the fourth or fifth hyperlink presented to Plaintiffs.  *See* Norton Decl.

### The Terms

Defendant's Terms not only mandate arbitration for disputes between the parties

but also: (a) pre-selects the American Arbitration Association (AAA) Commercial

Arbitration Rules; (b) mandates venue for both arbitration and any other judicial matter in

Mecklenberg County, North Carolina regardless of the Plaintiff's residency; (c) waives

class action mechanisms; (d) waives joinder of cases; (e) limits Plaintiff to actual

compensatory damages with the explicit waiver of multiplied, consequential, punitive, or

exemplary damages; (f) seeks to apply North Carolina law to all disputes within its ambit,

(g) only requires defendant to pay for filing fees and one day of arbitration, and (h)

requires the non-prevailing party to pay the remaining costs of arbitration. Terms (14)-

(15).  The arbitration clause was buried in the Terms section, and if read as presented,

Plaintiffs would have read approximately 42 pages before ever reaching the section

entitled "Dispute Resolution" in the Terms.[4]

With regard to appearance, the entire Dispute Resolution section was written in

bold print, making each clause and sub-clause virtually indistinguishable from the other.

Terms (14).  While the first section of the Terms discloses the existence of an arbitration

---

[3] Plaintiffs assume for the purposes of this brief that the Defendant's representations
about the Terms are true, as Plaintiffs have not yet been afforded discovery on this
matter.

[4] The Terms are the fourth hyperlink presented to consumers' and Plaintiffs then have to
traverse 9 more pages of parts and subparts before reaching the section entitled Dispute
Resolution with the arbitration clause, and yet another page before reaching the choice of
law provision dubiously placed, not in the Dispute Resolution section, but in the middle
of the paragraph entitled "other terms."  *See* Terms (15).

clause, conspicuously absent from the first-page warning is any reference to the joinder and class-action waivers. *Id.* (1). Nor was there a subject heading in the Table of Contents or Terms referencing "class actions" or hinting at a class waiver. *Id.* Only upon scrolling through the Terms, could notice the class waiver: a single, solitary line, buried in the second to last Term. Thus, even if the arbitration provision was clearly and conspicuously disclosed, it served only to cover-up the paltry, difficult-to-notice reference to the class waiver close to the end of the lengthy Terms section.

In forcing the costs of arbitration beyond Day Two on the non-prevailing party, Defendant potentially pushes a significant amount of costs upon a Plaintiff. Under the mandated AAA Rules of Commercial Arbitration, the parties are responsible for the travel expenses of the arbitrator and witnesses, the fees of the arbitrator "consistent with the arbitrator's stated rate of compensation", and the cost of renting hearing rooms. *See* American Arbitration Association, Commercial Arbitration Rules and Mediation (effective Sept. 1, 2007) http://www.adr.org/sp.asp?id=22440; F. Paul Bland, Jr. et al., Consumer Arbitration Agreements 133 (National Consumer Law Center 2007) (AAA daily hearing fee of $150 per party, room rental fee of $150 per party, and compensation for the arbitrator ranges from $100 to $400 an hour, accruing for both in-hearing time, study time, motions practice, and scheduling conferences) (Ex.2). Note that aside from the filing fee, under the AAA rules and the arbitration provision there is no hardship waiver for the additional costs. *See* Ex. 2. Additionally, Defendant potentially pushes its *own* attorney's fees upon a losing Plaintiff, without providing a hardship waiver if Plaintiff cannot afford to pay the cost Defendant's counsel sees fit to submit. *See* Terms (14). A recent news report states that counsel retained by Defendant, Reed Smith,

charged an average hourly rate of $441, with partners billing as high as $900 an hour. *See* National Law Journal, A Nationwide Sampling of Law Firm Billing Rates, Dec. 8, 2008, http://www.law.com/jsp/nlj/PubArticleNLJ.jsp? id=1202426491559 (Ex. 3). It should be noted that all of the Plaintiffs are of limited financial means and after their monthly expenses they have nearly nothing left over. *See* Bercaw Decl. ¶12 (Ex. 4); Woods Decl,. ¶13 (Ex. 5); Miller Decl., ¶7 (Ex. 6); Shaver Decl., (Ex. 7). Plaintiffs now come before this Court and argue that these Terms are unconscionable under California, Illinois, and North Carolina law.

## LEGAL STANDARD

The Federal Arbitration Act (FAA) sets limits on the enforcement of arbitration agreements. *See* 9 U.S.C. 1 *et seq.* Specifically, the FAA declares that written agreements to arbitrate are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.'" 9 U.S.C. § 2. State law contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements without contravening § 2. *See Doctor's Assoc., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996).

## ARGUMENT

I. **The Transferred Actions Are Governed By The Laws Of The Transferor Courts**

It is a tenet of multi-district litigation that when a lawsuit is transferred from one federal court to another pursuant to 28 U.S.C. §1404(a), the transferee court must apply the laws of the transferor district, including the transferor's choice-of-law rules. *Van Dusen v. Barrack*, 376 U.S. 612, 632-37 (1964). This principle also applies to transfers

pursuant to 28 U.S.C. §1407. *See In re Masonite Corp. Hardboard Siding Prod. Liab. Litig.*, 170 F.R.D. 417, 422 (E.D.La. 1997); *see also* Multidistrict Litigation Manual §9:18 (2008) (Ex 8); Manual for Complex Litigation, Fourth §20.132 (Ex 9). Choice of law questions are deemed "substantive" for purposes of the *Erie* doctrine. *Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 494 (1941).

As adopted in this Circuit, Fourth Circuit law applies to federal law questions and the law of the transferor court applies to state law questions. *See Toll Bros., Inc. v. Dryvit Sys., Inc.*, 432 F.3d 564, 568 n.4 (4th Cir. 2005); *Bradley v. United States*, 161 F.3d 777, 782 n.4 (4th Cir. 1998); *see also In re Stucco Litig.*, 364 F.Supp.2d 539, 540 (E.D.N.C. 2005). Since this Court is the transferee court under 28 U.S.C. §1407, it is obligated to apply the law of California and Illinois, the transferor districts, as it applies to state law issues. *See Van Dusen*, 376 U.S. at 632-37; *In re Masonite Corp.*, 170 F.R.D. at 422. Also, since Plaintiffs challenge the arbitration provision on the grounds of unconscionability -- a state law defense -- California and Illinois law control that issue.[5] *See Casarotto,* 517 U.S. at 687; *Van Dusen*, 376 U.S. at 632-37; *Toll Bros.*, 432 F.3d at 568 n.4.

II.     **Under California Law, Which Applies to the *Bercaw* and *Shaver* Actions, the Choice of Law and Arbitration Provisions Are Unenforceable**

   A.     **The North Carolina Choice of Law Provision is Unenforceable Because it Violates California Public Policy**

_____

[5] The existence of claims under the Fair Credit Reporting Act, 15 U.S.C. 1681 *et seq.*, does not mean that Fourth Circuit law or the law of the Western District of North Carolina applies, because the unconscionability and choice of law issues are state law issues decided under the law of the transferor court.

Under California law, courts will generally apply a choice of law provision unless it is contrary to California's fundamental policies. *See Nedlloyd Lines B.V. v. Superior Court*, 3 Cal.4th 459, 465 (Cal. 1992); *Hoffman v. Citibank (South Dakota, N.A.)*, No. No. 07-55616, 2008 WL 4554925, *3 (9th Cir, Oct. 14, 2008). In *Nedlloyd*, the California Supreme Court adopted the test set forth in the Restatement Second of Conflict of Laws § 187 for purposes of determining the validity of a choice of law provision. Under this test, the Court first must determine whether: (1) the chosen state has a substantial relationship to the parties or their transaction, or (2) there is any other reasonable basis for the parties' choice of law. *Id.* at 466. If either of these two criteria are met, the Court must then determine whether the chosen state's law is contrary to a fundamental policy of California. *Id.* If such a fundamental conflict exists, the court will "determine whether California has a materially greater interest than the chosen state in the determination of the particular issue…." *Id.* "If California has a materially greater interest than the chosen state, the choice of law shall not be enforced for the obvious reason that in such circumstance we [the Supreme Court of California] will decline to enforce a law contrary to this state's fundamental policy." *See id.*; *see also Discover Bank v. Superior Court*, 36 Cal.4th 148, 158 (2005) ("an arm's length choice-of-law provision between commercial entities will not be enforced if it violates a fundamental California public policy and California has materially greater interests than the chosen state.")

### 1. North Carolina Law Conflicts with California's Public Policy

Regardless of whether the North Carolina choice of law clause has a substantial relationship to the parties, it is unenforceable here because it conflicts with California's public policy. "California has a fundamental policy against unconscionable class

arbitration waivers." *Hoffman*, 2008 WL 4554924 at *4.  This clause would be found

unconscionable under California law.  Conversely, as illustrated in this Court's ruling in

the related case *Spinnozi v. LendingTree*, (3:08CV229), this court found nothing

unconscionable about any of the Defendant's Terms.  As demonstrated in Plaintiffs

Argument *infra* (II)(B)(3)(a), Defendant's class action waiver is unconscionable under

California law and if upheld would violate California's public policy.

        **2.**      **California has a Materially Greater Interest in This Litigation than North Carolina.**

While there is no bright line test to determine which State has a materially greater

interest in seeing its laws apply, California courts have considered the "domicile of the

parties and the place of the wrong."  *Douglas v. United States Dist. Court*, 495 F.3d 1062,

1067 n.2 (9th Cir. 2007); *see also Discover Bank v. Superior Ct. of Los Angeles*, 134

Cal.App.4th 886, 895 (2005).

Here, Plaintiffs Bercaw, Woods and Shaver are domiciled in Nevada, Georgia,

and Florida respectively.  *See* Bercaw Compl. ¶11-13; Shaver Compl. ¶11.  While

Defendant has one of its headquarters in North Carolina, most of Defendant's agents and

all of the Mortgage Defendants reside in or are incorporated in California, the state from

where the alleged misconduct emanated.  *See* Bercaw Compl. ¶15-19, 28, 32; Shaver

Compl. ¶13-17, 25-26; LendingTree.com, Locations, http://www.lendingtreejobs

.com/locations.php (Ex 10).  While North Carolina may have some interest in the case, it

has no greater interest than California in protecting the interests the Plaintiffs.  At the

same time, "California definitely has an interest in deterring fraudulent conduct by

businesses headquartered within its borders and protecting consumers from fraudulent

misrepresentations *emanating from California*."  *J.P. Morgan & Co., Inc. v. Superior*

*Court*, 113 Cal.App.4th 195, 221 (2003) (emphasis added).  Further, Plaintiffs Bercaw, Woods, and Shaver bring their claims mostly under state California law; plus one under FCRA.  *See* Bercaw Compl. ¶¶98-104; Shaver Compl. ¶93-99.  For all of these reasons, California indeed has a materially greater interest in determining the (in)validity of the arbitration and choice of law provisions.

**B.      The Arbitration Clause is Unconscionable and Unenforceable**

**1.      General Principles of Unconscionability Under California Law**

Under California law, unconscionability has both procedural and substantive components.  *Armendariz v. Foundation Health Psychcare Serv., Inc.,* 24 Cal. 4th 83, 114 (2000).  Procedural unconscionability addresses how the disputed terms were sought or obtained, "such as unequal bargaining power between the parties and hidden terms included in the contracts of adhesion."  *Szetela v. Discover Bank,* 97 Cal.App.4th 1094, 1100 (Cal. App. 4th 2002).  Substantive unconscionability "addresses the impact of the terms itself, such as whether the provision is so harsh and oppressive that it should not be enforced."  *Id.*; *see also Cohen v. DirecTV, Inc.*, 142 Cal.App.4th 1449-50 (2006).  While both procedural and substantive unconscionability must be present for a court to refuse enforcing a contract to arbitrate, they need not be present in the same degree.  *See Armendariz*, 24 Cal.4th at 114.  Rather, "the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa.  *Id.*

**2.      Defendant's Arbitration Clause is Procedurally Unconscionable**

**a.      The Terms Constitute a Contract An Adhesion Contract Drafted By A Party With Substantially Greater Bargaining Power**

The arbitration agreement at issue was part of a consumer contract of adhesion drafted by the Defendant.  "A contract of adhesion is defined as 'a standardized contract,

imposed upon the subscribing party without an opportunity to negotiate the terms." *See*

*Shroyer v. New Cingular Wireless Serv., Inc.,* 498 F.3d 976, 983 (9th Cir. 2007). "The

California Court of Appeal has held that '[a] finding of a contract of adhesion is

essentially a finding of procedural unconscionability.'" *Nagrampa v. MailCoups, Inc.*,

469 F.3d 1257, 1281 (9th Cir. 2006). In the present case Defendant did not offer

Plaintiffs an opportunity to negotiate the Terms which contained the class action waiver.

Plaintiffs were presented a take-it-or-leave-it offer. *See* Terms (1) ("If you do not agree

to these terms and conditions, you are not authorized to access or use the Websites and

you are to cease accessing or otherwise using the Websites.") As this contract is the

quintessence of a contract of adhesion, this Court should find procedural

unconscionability. *See Nagrampa*, 469 F.3d at 1281.

     The Defendant likewise had substantially greater bargaining power than the

Plaintiffs, which is also relevant when examining procedural unconscionability. *See*

*Shroyer,* 498 F.3d at 984. It cannot be disputed that Defendant is a large, sophisticated

corporation which specializes in the origination of mortgage loans. *See* Terms (3)(A). In

contrast, Plaintiffs and the members of the Class sought Defendant's services

individually. *See* Bercaw Compl. ¶11-14; 24-28; Shaver Compl. ¶22.

       3.     **Defendant's Arbitration Clause is Substantively Unconscionable**

       a.     **The Class Action Waiver**

     California has a "fundamental policy against unconscionable class arbitration

waivers." *Hoffman*, 2008 WL 4554925 at *4. California has deemed the protection of

unwary consumers "an exigency of the utmost priority in contemporary society."

*America Online v. Superior Court*, 90 Cal.App.4th 1, 17 (Cal. App. 2001). Without class

actions, unscrupulous sellers could retain their ill-gotten gains because the loss of individually defrauded consumers would be insufficient to justify bringing separate actions. *Id.* Class actions also produce "several salutary by-products, including a therapeutic effect upon those sellers who indulge in fraudulent practices, aid to legitimate business enterprises by curtailing illegitimate competition, and avoidance to the judicial process of the burden of multiple litigation involving identical claims." *Id.* Absent a policy of prohibiting unconscionable class action waivers, a defendant could "essentially grant[ ] itself a license to push the boundaries of good business practices to their furthest limits, fully aware that relatively few, if any, customers will seek legal remedies and that any remedies obtained will only pertain to that single customer without collateral estoppel effect." *Klussman*, 36 Cal.Rptr.3d at 739.

The California Supreme Court has declared that a class action waiver is unconscionable if:

> (1) the agreement is a consumer contract of adhesion drafted by a party that has superior bargaining powers; (2) the agreement occurs in a setting in which disputes between the contracting parties predictably involve small amounts of damages; and (3) the party with the superior bargaining power has carried out a scheme to deliberately cheat large numbers of consumers out of individually small sums of money.

*Hoffman*, 2008 WL 4554925 *5 (citing *Shroyer*, 498 F.3d at 983; *Klussman*, 36 Cal.Rptr.3d at 739-40). Here, all three of these factors are present, rendering the class action waiver unconscionable and unenforceable.

First, as discussed *supra* in §(II)(B)(2)(a), the Terms constitute a contract of adhesion drafted by a party with superior bargaining powers. Second, this case involves a predictably small amounts of damages. *See Hoffman*, 2008 WL 4554925 *4. Whether the amount of damages qualifies as small does not depend on if the plaintiff characterizes

the amount as an "insignificant sum," but whether the amount is sufficient "to warrant individual litigation" and "obtain legal assistance in prosecuting the claim." *See Cohen*, 142 Cal.App.4th at 1452. Here, Plaintiffs seek statutory damages under the FCRA from each defendant in the amount of $100 to $1,000 per violation, amounts considered small by California decisions. *Cf.* Bercaw ¶65, 74; Shaver ¶60, 69 *with Oestreicher v. Alienware Corp.*, 502 F.Supp.2d 1061, 1067-1068 (N.D. Cal. 2007); *Cohen*, 142 Cal.App.4th at 1452. Plaintiffs also seek credit monitoring, damages under common law theories, an injunction against defendants, and any other legal or equitable relief the court sees fit. *See* Bercaw Compl. ¶52-139; Shaver Compl. 47-134. The fact that the statutory damages plus any additional damages may exceed $4,000 does not necessarily mean the amount warrants individual litigation. *See Cohen*, 142 Cal.App.4th at 1452.

Finally, Plaintiffs were victims of a scheme. Under this factor, California courts focus on whether there was a scheme to deliberately cheat large numbers of consumers. *See Hoffman*, 2008 WL 4554925 at*5; *Shroyer*, 498 F.3d at 984; *Cohen*, 142 Cal.App.4th at 1452-53. The gravamen of Plaintiffs' complaint is that Defendant's agents intentionally and illegally allowed Plaintiffs' and thousands of Class members' personal and financial information to be sold. *See* Bercaw Compl. ¶3; Shaver Compl. ¶3. As Plaintiffs have specifically alleged a widespread scheme to defraud, this third element is satisfied. *Cf. Shroyer*, 498 F.3d at 984 *with* Bercaw ¶60, 94, 101; Shaver Compl. ¶55-59.

### b.      The Costs of Arbitration

Defendant's arbitration clause will impose excessive costs on consumers, thereby denying them access to justice. The Supreme Court held in *Green Tree Financial Corp. v. Randolph*, 531 U.S. 79, 90 (2000) that the imposition of prohibitive costs in an arbitral forum can render an agreement unenforceable. *See also Ting v. AT&T,* 182 F.Supp.2d 902,

916-17 (2002), *reversed on other grounds,* 319 F.3d 1126 (9th Cir. 2003) (discussing AAA

Commercial Arbitration Rules and holding arbitration clause unconscionable under

California law); *Popvich v. McDonald's Co.,* 189 F.Supp.2d 772, 778 (N.D. Ill.2002)

(finding that arbitration under Commercial rules would be "staggering" and the arbitration

provision therefore unenforceable due to prohibitive costs"); *Camacho v. Holiday Homes*,

167 F.Supp.2d 892 (W.D. Va. 2001) (finding arbitral forum financially inaccessible

because plaintiff's "limited income afford[ed] no margin for expense of the magnitude

required to pay an arbitrator).

       In *Armendariz,* the California Supreme Court held that "the arbitration agreement or

arbitration process cannot generally require the [plaintiff] to bear any type of expense that

[the plaintiff] would not bear if [the plaintiff] were to bring the action in court." 24 Cal. 4th

109-111. As set forth in Factual Background of this brief, Plaintiffs establish a number of

the AAA's costs, which if imposed upon Plaintiff would exceed the $350 cost to file in

court. *Cf* Bland, *supra* Consumer Arbitration Agreements at 133 with 28 U.S.C.A. §1914.

By imposing these cost-prohibitive arbitration fees, precluding joinder of claims, and

setting an unreasonable "place and manner" for the arbitration, Defendant has attempted to

contractually insulate itself from "any meaningful challenge to its alleged practices."

*PayPal v. Combs*, 218 F.Supp.2d 1165, 1176 (N.D. Cal. 2002) (holding that arbitration

clause calling for application of commercial rules of American Arbitration Association was

cost-prohibitive and substantively unconscionable). The arbitration clause is thus

substantively unconscionable based on cost as well.

**c.      The "Loser Pays" Provision**

       The arbitration clause is substantively unconscionable for the additional reason that

it requires the non-prevailing party to pay the other party's attorneys' fees in violation of

California law. *See* Norton Decl., ¶ 14. Further, it conflicts with Plaintiff's Unfair

Competition Law, Bus. & Prof. Code §§ 17200 ("UCL") claim which forbids a successful

defendant to recover any attorneys' fees. *See Walker v. Countrywide Home Loans, Inc.,* 98 Cal.App.4th 1158, 1179-80 (2002).

In *Small v. HCF of Perrysburg,* 159 Ohio App. 3d 66, 72 (2004), the court explained precisely why a "loser pays" provision such as the one in Defendant's Terms is unconscionable:

> [W]e find troubling the fact that the prevailing party is entitled to attorney fees. Typically, attorney fees are not awarded to the prevailing party in a civil action unless ordered by the court (such as following a finding of frivolous conduct). Though the prevailing party may be the resident or representative, individuals may be discouraged from pursuing claims because, in addition to paying their attorney and, pursuant to the arbitration clause, the costs of arbitration, they may be saddled with the facility's costs and attorneys fees. Such a burden is undoubtedly unconscionable.

Since Defendant's "loser pays" provision is likely to discourage most consumers from pursuing their claims and is contrary to California's Unfair Competition Law, the arbitration clause is unconscionable and should be invalidated.

### d.     The Limitations On Damages

The arbitration clause also limits the type of damages Plaintiffs and Class members are entitled to recover from Defendant if they prevail.   Such a provision violates California Civil Code 1668 which states that "[a]ll contracts which have for their object, directly or indirectly, to exempt anyone from responsibility for his own fraud, or willful injury to the person or property of another, or violation of law, whether willful or negligent, are against the policy of law."  California courts have repeatedly found provisions limiting the damages available unconscionable. *See Kinney v. United Health Care Serv., Inc.,* 70 Cal.App.4th 1322 (1999); *Stirlen v. Supercuts, Inc.,* 51 Cal.App.4th 1519, 1546 (1997); *Ting,* 182 F.Supp.2d at 939.  The Court should do the same here.

### e.     The Waiver of Statutory Rights

In addition to all the reasons described above, the arbitration clause is substantively unconscionable because it denies Plaintiffs the means to assert their statutory rights under

the Unfair Competition Law, which allows for collective action and for the recovery of restitution and equitable remedies such as injunctive and declaratory relief. Cal. Bus. & Prof. Code §§ 17200, *et seq.* Through the arbitration clause, Defendant seeks to shield itself from the reach of California's consumer protection laws. "Parties agreeing to arbitrate statutory claims must be deemed to 'consent to abide by the substantive and remedial provisions of the statute. Otherwise, a party would not be able to fully vindicate [his or her] statutory cause of action in the arbitral forum." *Armendariz,* 24 Cal.4th at 101.

Requiring a waiver of collective action, permitted under the UCL, under the guise of imposing arbitration is substantively unconscionable. *See e.g., Ting*, 182 F.Supp.2d at 927. Further, Plaintiffs' and Class members' claims for injunctive relief under the UCL are not arbitrable. *See Coast Plaza v. Blue Cross,* 83 Cal.App.4th 677, 820 (2000). For these reasons and all the others above, this Court should find Defendant's arbitration clause unenforceable.

### III. <u>Under Illinois Law, Which Applies to the *Miller* Action, the Choice of Law and Arbitration Provisions Are Unenforceable</u>

#### A. **The North Carolina Choice of Law Provision Violates Illinois' Public Policies**

As previously discussed, this Court presides as an Illinois court would for issues involving *Miller*. *See supra* §I. Under Illinois law, an express choice-of-law provision is effective only if the chosen state bears a reasonable relationship to the parties or the transaction and it does not contravene Illinois public policy. *Wigginton v. Dell, Inc.*, 890 N.E.2d 541, 544 (Ill.App. 2008) (declining to enforce a Texas choice of law provision because of differing requirements for proving unconscionability). . North Carolina law contravenes with Illinois public policy. *Compare Tillman*, 362 N.C. at 102 (finding North Carolina law requires a finding of both procedural and substantive unconscionability) *with Kinkel v. Cingular Wireless LLC*, 857 N.E.2d 250, 263 (Ill. 2006) (finding Illinois law only requires a finding of procedural <u>or</u> substantive

unconscionability)(citation omitted).  As this case presents circumstances similar to *Wigginton*, this Court should apply Illinois law to avoid violating the public policy of Illinois.[6]

### B.  The Class Action Waiver is Unconscionable Under Illinois Law.

Under Illinois law, the class action waiver is unconscionable and because the class action waiver fails, so too must the arbitration provision.  *See infra* (V) (arguing that the unconscionable provisions should not be severed from one another) *see also* Terms at 14 ("To the fullest extent permitted by applicable law, no arbitration under this Agreement shall be joined to an arbitration involving any other party subject to this Agreement, whether through class arbitration proceedings or otherwise.")  To be declared unconscionable, clause need only be procedurally or substantively unconscionable.  See *Kinkel*, 857 N.E.2d at 263 (citation omitted).  Yet even if the clause is not procedurally or substantively unconscionable enough to declare it unconscionable, the two types of unconscionability can be considered together to declare the term unconscionable.  *See id.* at 267.

### 1.  The Class Action Waiver is Substantively Unconscionable.

Here, Plaintiff Miller had no opportunity to discard, negotiate, or reject unconscionable portions of Lending Tree's boilerplate Terms.  Under similar, take-it-or-leave-it circumstances, the court in *Kinkel* adopted the following definition of substantive unconscionability:

---

[6]    Alternatively, if this Court finds it cannot make a conflict of law determination based on the pleadings before it, it should order discovery to determine which State has the most significant contacts to the litigation.   *See T-Bill Option Club v. Brown & Co. Sec. Corp.*, 88C8461, 1990 WL 103584 *3 (N.D. Ill. July 2, 1990) (finding discovery to be appropriate when determining which State has the most significant contacts to the litigation); *Gorbey v. Longwill*, CIVA 05-211, 2007 WL 891525 *4 (D.Del. Mar. 22, 2007); *see also* FRCP 26(b)(1).

> Substantive unconscionability concerns the actual terms of the contract and examines the relative fairness of the obligations assumed. Indicative of substantive unconscionability are contract terms so one-sided as to oppress or unfairly surprise an innocent party, an overall imbalance in the obligations and rights imposed by the bargain, and significant cost-price disparity.

*Kinkel,* 857 N.E.2d at 267. The class action waiver at issue here is "burdened by other unfair features, rendering it substantively unconscionable as a whole"as it is oppressive, provides an overall imbalance of obligations and rights, and results in a comparatively more expensive proceedings for Plaintiff Miller. *Id.* at 271; *see also id* at 274 (finding that if other terms limit the ability of the plaintiff to obtain a remedy in a cost-effective manner, the "right to seek classwide redress is more than a mere procedural device.") *Kinkel* at 274.

Defendant's class action waiver is coupled with a forum selection clause requiring arbitration in another state and forecloses "practical redress through a class action and limit[s] them to a disproportionately expensive individual arbitration." *Id.* at 271. As such, Plaintiff would be deterred from even bringing an individual action in arbitration, because the Terms require it to take place in North Carolina – a plane ride and hotel stay away from his home – and be Plaintiff would be potentially be responsible for all of the arbitration costs. *See infra* §(IV)(A)(2)(a) (excessive fees serve as a deterrent); Terms (14).

The class waiver clause is further deemed substantive unconscionability under *Kinkel* as it was "clearly meant to prevent customers from seeking redress for relatively small amounts of money," and where, if an individual customer does obtain a remedy, it "will only pertain to that single customer without collateral estoppel effect." *Kinkel,* 857 N.E. 2d at 272 (citation omitted).

Further, under *Kinkel*, LendingTree's exclusion of punitive, indirect, incidental, special, consequential and punitive damages serve to "limit[]defendant's liability to actual

damages" and weigh towards a finding of substantive unconscionability. *Id.* at 271; *see* Terms (8).

The *Kinkel* Court also affirmed the sound policy considerations that class waiver undercut through exculpating wrongful conduct by reducing the possibility of attracting competent counsel to advance the cause of action. *Kinkel,* 857 N.E. 2d at 271 (citations omitted).

In addition, the Illinois Supreme Court has painstakingly demonstrated instances where class action waivers *could* be held valid, where, for example, "the arbitration clause provided that arbitration would take place in the customer's home jurisdiction and that the [defendant] bank would advance the fees and costs for arbitration." *Kinkel,* 857 N.E. 2d at 273. Here, in stark contrast, as shown above Lending Tree has offered to pay "the costs" associated with the first day of arbitration and the filing fee only, and Lending Tree has required Plaintiff Miller to conduct the arbitration far away from his home state of Illinois.

Post-*Kinkel,* Illinois courts have recognized the pivotal distinction of class waiver provisions in assessing the unconscionability of arbitration. "We also emphasize that our policy in favor of enforcing arbitration agreements does not extend to complete prohibitions on the class treatment of disputes that happen to be contained in arbitration agreements." *Wigginton*, 890 N.E. 2d 541. Similarly, in *Bess v. DIRECTV,* 885 N.E. 2d 488 (Ill. App. 2008), the Court found no substantive unconscionability because, *inter alia,* the arbitration provision, quite unlike here, *permitted* class arbitration and capped the consumer's fee for class arbitration at the amount applicable to bring a similar action in court. *Id.* at 501. Thus, under Illinois law class waivers may not be enforceable, and are severable even from an arbitration provision that is otherwise valid, despite the policy favoring arbitration. *Kinkel,* 857 N.E. 2d at 276-77.

**B. The Class Waiver is Procedurally Unconscionable Under Illinois Law.**

20

"Procedural unconscionability refers to a situation where a term is so difficult to find, read, or understand that the plaintiff cannot fairly be said to have been aware he was agreeing to it…." *Kinkel,* 857 N.E. 2d at 264. "This analysis also takes into account the disparity of bargaining power between the drafter of the contract and the party claiming unconscionability." *Id.* "An important factor to consider" is whether the term is "offered in a form contract on a take-it-or-leave-it basis," and whether the provision is 'bargained for, brought to the [consumer's] attention[,] or … conspicuous.' " *Frank's Maint. & Eng'g, Inc. v. C.A. Roberts Co.,* 408 N.E.2d 403, 410 (Ill. App. 1980). Indeed, Illinois courts have long found provisions offered on a take-it-or-leave-it basis and also 'hidden in a maze of fine print' to be procedurally unconscionable, even if the consumer had access to the offending contractual provision. *See, e.g., id.* at 411. The same holds true here. Even if Plaintiff Miller had access to Lending Tree's Terms, that fact hardly undermines the circumstances indicating that the class waiver was hidden in the online text box in the manner described above. Under these standards, the class action waiver is *procedurally* unconscionable, especially when considered in tandem with the factors (*see* Factual Background) mitigating in favor of a finding of substantive unconscionability.

IV.     **Alternatively, The Arbitration Clause Is Invalid Under North Carolina Law**

If this Court finds applies North Carolina law, it should nevertheless still invalidate the arbitration clause under prevailing North Carolina precedents.

A. *Tillman* **Created A New Test For Unconscionability**

In the past year, the North Carolina Supreme Court and the North Carolina Court of Appeals have clarified the law governing unconscionability and adopted a new framework for analyzing unconscionability in the context of arbitration agreements. *See Tillman v. Commercial Credit Loans, Inc.*, 362 N.C. 93 (N.C. 2008); *Kucan v. Advance Am.*, 660 S.E.2d 98, 102 (N.C.App. 2008). As stated in *Kucan*, *Tillman* "provides a new

method of analysis for cases going forward." *Kucan*, 660 S.E.2d at 102; *see also Holland v. Duke Univ. Health Sys. Inc, et al.,* No. 37-CVS-00306, slip op. at 2 (General Court of Justice, Harnett County, August 19, 2008 (Ex. 11). Under this new test, procedural and substantive unconscionability are weighed on a sliding scale in which no one factor is necessarily outcome determinative. *See Kucan*, 660 S.E.2d at 102; *Holland,* slip op. at 2. Instead, "a finding [of unconscionability] may be appropriate when a contract presents pronounced substantive unfairness and a minimal degree of procedural unfairness, or vice versa…." *Id.*

In measuring unconscionability, a court must consider "all the facts and circumstances of a particular case." *See Tillman*, 655 S.E.2d at 369, 374 (citing *Brenner v. Little Red. Sch. House Ltd.*, 302 N.C. 207, 213 (1981)). Thus, to determine the unconscionability of Defendant's arbitration clause, the Court should examine all the facts and circumstances present in the instant case (as may be augmented through discovery), not just those facts that existed in *Tillman*. *See Kucan*, 660 S.E.2d at 104 (remanding the case "so that the superior court may reexamine the facts in light of *Tillman*", rather than instructing the lower court to reexamine in light of the *Tillman* facts).

### 1. The Arbitration Provision Is Procedurally Unconscionable

Defendant's arbitration clause has a pronounced degree of procedural unconscionability, as demonstrated in *Tillman*, and should be voided, as it contains: (1) unequal bargaining power; (2) a boilerplate contract; (3) a contract of adhesion; (4) unfair surprise; and a (5) the lack of reasonably viable alternatives to accepting the Terms.

### a. Plaintiffs Were Unquestionably Disadvantaged In Bargaining Power And Were Presented No Choice But To Sign A Boilerplate Contract of Adhesion

The unequal bargaining power of the parties created by Defendant's arbitration clause makes the clause procedurally unconscionable. *See Holland,* No. 37-CVS-00306, slip op. at 3. Bargaining power between defendants and plaintiffs is deemed "unquestionably unequal" where plaintiffs are "relatively unsophisticated consumers contracting with corporate defendants." *See Tillman*, 362 N.C. at 103 (finding "unquestionably unequal" bargaining power where two individuals signed loan agreements which contained an arbitration provision). As discussed in *supra* §(II)(B)(2)(a), Plaintiffs had significantly less bargaining power than the Defendant. *Cf* Bercaw Compl. ¶11-13, 24-28; Shaver Compl ¶11,22; Miller ¶2,7; with Terms (3)(A); Tree.com, S.E.C. Form 424B3 2008 Prospectus p.5 (filed 11/12/2008) (Ex. 15). As in *Tillman*, this Court too should find that unequal bargaining power exists here and creates procedural unconscionability.

It is procedurally unconscionable for a party with superior bargaining power to impose a boilerplate contract of adhesion on a lesser powered party. *See Tillman*, 362 N.C. at 103; *see also Delta Funding Corp. v. Harris*, 189 N.J. 28, 40-41 (2006). Yet this is precisely the scenario here.

Defendant's Terms are the epitome of a boilerplate contract of adhesion. Boilerplate language is "[f]ixed or standardized contractual language that the proposing party views as relatively nonnegotiable." Black's Law Dictionary at Boilerplate (8th ed. 2004). A contract of adhesion is a "standard-form contract prepared by one party, to be signed by the party in a weaker position, usu[ally] a consumer, who adheres to the

contract with little choice about the terms." Black's Law Dictionary at Contract (8th ed. 2004); *see also Tillman*, 362 N.C. at 98. "Arbitration clauses included in contracts of adhesion are disfavored in law." *See Tillman v. Commercial Credit Loans, Inc.*, 177 N.C.App. 568, 587 (2006)(Hunter J., dissenting)); *see also Kucan*, 660 S.E.2d at 98. In the present case, the Terms and its arbitration clause were drafted by Defendant. *See supra* §(II)(B)(2)(a). As such, this Court should find procedural unconscionability on the grounds that Defendant - a party with superior bargaining power - imposed a boilerplate contract of adhesion on the lesser powered Plaintiffs. *See Tillman*, 362 N.C. at 103.

### b. The Arbitration Provision Constitutes Unfair Surprise

In evaluating whether a contract is procedurally unconscionable, courts should consider whether the party challenging the term was likely to be surprised to learn of the term. *See Tillman*, 362 N.C. 102-03; *Schmitt v. SSC Statesville Brian Ctr. Operating Co. LLC*, No. 3:07CV321, 2008 WL 1745870 *2 (W.D.N.C. Apr. 11, 2008)); *Walker v. Caterpillar Indus., Inc.*, 34 F.3d 1067 (4th Cir. 1994)(considering surprise and conspicuousness in determining unconscionability in the Fourth Circuit). In looking at whether a term is a "surprise", courts have considered the depth at which the defendants chose to *bury* their unconscionable clause. *See Banc One Acceptance Corp. v. Hill*, 367 F.3d 426, 431 (5th Cir. 2004).

Plaintiffs in this case were surprised because the arbitration clause was buried toward the end of the multiple contracts presented to Plaintiffs on its website (on page 42 of a 44 page contract if read together in order). [7] *See* Norton Decl., Ex 5 (presenting

---

[7] Plaintiffs assume, without conceding, that the policies currently set forth on Defendant's website are substantially similar to those allegedly presented to the Plaintiffs. *See* Def.

Plaintiffs the following links in order: Privacy Policy, Licenses and Disclosures,

Affiliated Business Disclosures, and Terms); LendingTree.com, LendingTree Privacy

Policy http://www.lendingtree.com/stmrc/privacy.asp?inline=true, (Ex. 12);

LendingTree.com, Licenses and Disclosures,

http://www.lendingtree.com/stmrc/disclosure.asp?nonav=true&bp=LTQuickMatch, (Ex.

13); LendingTree.com, Affiliated Business Disclosures,

https://quickmatch.lendingtree.com/abd.asp?bp=ltquickmatch, (Ex. 14); Terms.

Defendants buried their clause.  Thus, the Court should find surprise in favor of Plaintiffs

and, therefore, procedural unconscionability.  *See Villa Milano Homeowners Ass'n v. Il*

*Davorge*, 84 Cal. App. 4th 819, 829 (2000) (finding surprise and unconscionability when

defendant buried the arbitration clause on page 67-86 of a 70-page contract).

Note that Plaintiffs are not arguing that the arbitration clause is unconscionable

because Plaintiffs may or may not have read the contract and/or the arbitration clause.

Plaintiffs simply ask that Defendant not be allow to hide behind technology of the digital

age.[8]  If this contract was presented on paper, courts would not hesitate to acknowledge

that the presentation was procedurally unconscionable.  *See eg. Banc One*, 367 F.3d at

431; *Villa Milano*, 84 Cal. App. 4th at 829. Defendants buried even the first notice of the

arbitration provision behind lengthy links containing such "important" information as

what names the Defendant does business under in all 50 states.  *See* Ex. 14.  Defendant's

order of presentation militates in favor of finding procedural unconscionability.

### c.  Consumers Had No Reasonable Alternative

Mot. at 3 (stating the dialog box has undergone only "minor changes during 2007 and 2008).
[8] Cf. Friedman, Protecting Consumers from Arbitration Provisions in Cyberspace, The Federal Arbitration Act and E-Sign Notwithstanding, 57 Cath. U.L.Rev. 377 (Winter 2008).

On *Tillman's* sliding scale, consumer choice is one factor which may militate toward or away from unconscionability. *See* 362 N.C. at 102; *see also. Brenner*, 302 N.C. at 213-14 (considering consumer choice Pre-*Tillman*). Without giving greater weight to the element than proper, a court should consider whether consumers had a meaningful choice – i.e. whether there were reputable competitors providing the same service as Defendant without arbitration agreements or whether the Defendant would provide its services without Plaintiffs agreeing to the arbitration clause. *Cf. Tillman*; *Holland,* slip op. at 2-3.

To evaluate the availability of alternative service providers, the Court must make a factual determination regarding the type of service Defendant provides. Defendant is a computerized loan originator who "is not a lender", *see* Terms (3)(A). Thus, Defendant cannot be compared to brick-and-mortar banks or other online mortgage lenders. *See Bragg v. Linden Research, Inc.*, 487 F.Supp.2d 593, 606 (E.D. Pa. 2007). Rather, Defendant competes as a lead aggregator against other online intermediaries. *See* SEC S-1/A Filing dated Aug. 8, 2008 (Ex. 16).

In determining whether a reasonable alternative is available, courts have considered the ease to which the Plaintiff could find an alternative. *See Ting*, 182 F.Supp.2d at 929 ("Finding a carrier who did not contain such a provision was not easy."). On the internet, Defendant is one of only a handful of reputable companies which aggregate mortgage leads and many alternative services available to consumers include arbitration agreements in their contracts.[9] *See* Benick Decl. (Ex. 17).

---

[9] While Plaintiffs do not and cannot represent that no company on the internet provides a service comparable to Defendant's mortgage lead aggregation *without* an arbitration provision, Plaintiffs do argue that the prevalence of arbitration agreements in similar,

Moreover, as in *Tillman* and *Holland*, Defendant would not provide their services to Plaintiffs without Plaintiffs agreeing to the arbitration agreement. *See* Def. Mot. 2-3, 6. North Carolina courts view the inability to receive service without agreeing to binding arbitration as procedurally unconscionable. *See Tillman*, 362 N.C. at 103 (finding procedural unconscionability where the defendant admitted they would have refused to make the loan rather than negotiate); *Holland*, slip op. at 2-3 (finding Plaintiff had no "meaningful choice in order to receive treatment other than to sign … Defendant's binding arbitration agreement."). Plaintiffs had no choice but to accept an arbitration agreement whether from Defendant or another company. Such a lack of choice further supports a finding of procedural unconscionability.

### 2. The Arbitration Provision Contained In The Terms Is Substantively Unconscionable

Under the test adopted in *Tillman*, there is a sufficient showing here to establish that the class arbitration waiver is substantively unconscionable. *See Kucan*, 660 S.E.2d at 102-03. In *Tillman*, the court found the arbitration agreement procedurally unconscionable because of "prohibitively high arbitration costs, the excessive one-sidedness of the arbitration clause, and the prohibition of joinder." *See Kucan*, 660 S.E.2d at 103 (citing *Tillman*, 362 N.C. at 104); *see also Holland*, slip op. at 3. The collective effect of the arbitration provisions was that plaintiffs were precluded from "effectively vindicating [their] ... rights in the arbitral forum." *See id.* In the present case, Defendant's arbitration provision contains multiple one-sided provisions which force the Plaintiffs to waive their day in court while prohibiting joinder and making

___

reputable websites are such that Plaintiffs did not have a readily accessible alternative. *See Ting*, 182 F.Supp.2d at 929; *Kloss*, 310 Mont at 128.

Plaintiffs litigate in a more expensive forum where Plaintiff may be forced to pay both their costs and the costs and attorney's fees of Defendant.

> ### a. The Excessive Fees and Costs Of Arbitration Effectively Prevents Vindication of Plaintiffs' Statutory and Common Law Rights

An arbitration provision is unenforceable if the collective effect of its operation prevents Plaintiffs from vindicating their causes of action. *See Green Tree*, 531 U.S. at 90; *Mitsubishi Motors Corp v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 637 (1985); *Tillman*, 362 N.C. at 104. The Fourth Circuit has held that any inquiry into arbitration costs must focus on: (1) the claimant's ability to pay arbitration fees and cost; (2) the expected cost differential between arbitration and court litigation; and (3) whether the cost differential is substantial enough to deter bringing claims. *See Bradford v. Rockwell Semiconductor Sys., Inc.*, 238 F.3d 549, 556 (4th Cir. 2001); *Tillman*, 362 N.C. at 104 (adopting *Bradford*).

Plaintiffs satisfy the first part of *Bradford* as they are unable to pay the high costs of arbitration. If a plaintiff cannot afford access to the alternative adjudicative forum, then the plaintiff does not have an adequate substitute to litigation and should be allowed to litigate. *Cf. Bradford*, 238 F.3d at 556. Plaintiffs Bercaw, Woods, Miller and Shaver each demonstrate that they essentially live paycheck to paycheck with very little money left after paying their monthly bills. *See* Ex.4 at ¶5,12; Ex. 5 ¶7,13; Ex. 6 ¶5,7; Ex.7. As opposed to plaintiff Bradford - who had a salary of over $115,000 – Plaintiffs here do not have disposable income available to risk in a costly arbitration procedure. *Cf. Bradford*, 238 F.3d at 558 n.6 . Since the arbitration provision prohibits joinder and class actions, Plaintiffs cannot even pool their finances to afford arbitration. *See* Terms (14).

Plaintiffs' limited financial means weighs in favor of finding the arbitration clause unconscionable. *See Holland,* slip op. at 3

As shown above, the cost of arbitration is substantially greater than the cost of litigation and, under *Bradford,* acts as a deterrent for individuals to bring their claims. *See* 238 F.3d at 556; *supra* §(II)(B)(3)(b). The cost of filing a case in District Court is $350. *See* 28 U.S.C.A. §1914. The Court's time in adjudicating the claim is free. Conversely, arbitration presents a number of costs above and beyond a filing fee, *see supra* Facts: The Terms; *supra* §(II)(B)(3)(b) *see also Tillman*, 362 N.C. at 105 (finding the average daily rate of a North Carolina AAA arbitrator as $1,225.00).

Under the second and third part of *Bradford*, the cost differential between litigation and arbitration is so great that it acts as a deterrent from for individuals to bring their claims. *See* 238 F.3d at 556; *supra* §(II)(B)(3)(b). As demonstrated above, paying for the arbitrators and the fees associated with arbitration present significantly higher costs than filing a lawsuit in court and effectively deters the bringing of claims. *See Bradford*, 238 F.3d at 556; *Tillman*, 362 N.C. at 105. When making the *Bradford* determination, the Court is to also consider "whether the arbitration agreement provides for fee-shifting, including the ability to shift forum fees based upon the inability to pay." *Id.* at 556 n.5. Defendant's agreement does not shift fees based on a plaintiff's inability to pay, nor does limited hardship waiver that the AAA provides significantly lessen a plaintiff's potential arbitration expense. *See supra* Facts: The Terms (outlining arbitration fees and the inadequate hardship waiver). A Plaintiff may find that arbitration will be so prohibitively expensive that they cannot take advantage of the arbitral forum. *Parilla v. IAP Worldwide Serv., VI, Inc.*, 368 F.3d 269, 284 (3d Cir. 2004). The prospect

of having "to pay the entire amount of the arbitrator's fees and expenses may serve to chill [their] willingness to bring a claim." *Id.*

When compared to the arbitration provision in *Tillman*, Defendant's arbitration provision contains many of the same features that the *Tillman* court found would deter consumers from vindicating their rights. *See* 362 N.C. at 105. [10] Like *Tillman*, this clause contains a loser pays provision, and a prohibition on joinder and class actions. *See* 362 N.C. at 106. Plaintiffs would have great difficulty in finding counsel to vindicate their rights and the high cost of arbitration greatly outpaces Plaintiffs' litigation expense. *Cf. id.* at 105 *with* James Hopf Aff. (Ex 18); Michael Wimer Aff. (Ex. 19). Accordingly, this court should find "Defendant's arbitration clause contains features which would deter many consumers from seeking to vindicate their rights." *See Tillman*, 362 N.C. at 106.

### b.   The Loser Pays Provision Is Unconscionable

Defendant's arbitration provision is substantively unconscionable. The clause is essentially a "loser pays" provision as it shifts the "remaining costs of arbitration" and attorneys fees to the non-prevailing party. *See* Terms (14). Loser pays provisions are a break with the American Rule of attorney's fees.

Defendant's provision is made even more egregious because it applies regardless of the merits of the dispute, which flies in the face of congressional intent. *See* Terms (14). Loser pays provisions which interfere with congressionally established fee and cost rules are unenforceable. *Graham Oil Co. v. ARCO Prods. Co.*, 43 F.3d 1244, 1247 (9th Cir. 1994); *Plaskett v. Bechtel Intern., Inc.*, 243 F.Supp.2d 334, 340 (D.V.I. 2003);

---

[10] While Plaintiffs have not had discovery on the number of arbitrations brought against Defendant, a number of the other chilling *Tillman* factors are nevertheless present. *See* 362 N.C. at 105-106.

*Gambardella v. Pentec, Inc.*, 218 F.Supp.2d 237, 246 (D.Conn. 2002). Congress clearly decided that, under the FCRA, plaintiffs are entitled to costs and attorney's fees if victorious and defendants are only entitled to costs and fees if the court finds the action was filed in "bad faith or for purposes of harassment." *See* 15 U.S.C.A. § 1681n (a)(3), (c). Plaintiffs' cases were filed in good faith and, as such, under the FCRA Plaintiffs cannot be responsible for Defendant's costs and fees. However, that is precisely what Defendant's arbitration provision calls for if Defendant prevails.

On top of the already high costs of arbitration discussed above, the loser pays provision creates a situation where Plaintiffs risk paying the high attorney's fees of corporate litigation lawyers, hired by Defendant on an hourly basis, in order to hold Defendant accountable. A similar loser pays provision has been found to be substantively unconscionable by the North Carolina Supreme Court. *See Tillman*, 362 N.C. 99, 106.

### c. Clauses Which Limit Available Damages Are Unconscionable

Plaintiffs were not only forced to waive their day in court through an unconscionable arbitration provision, they were also forced to waive their right to any damages in "excess of actual compensatory damages." *See* Terms (14). An arbitration provision which limits a Plaintiff's right to statutory or punitive damages is unenforceable and substantively unconscionable. *See State ex rel. Dunlap v. Berger*, 211 W.Va. 549, 562 (W.Va. 2002)(stating that a prohibition against punitive damages would categorically shield the defendant, regardless of the degree of wrongdoing); *Simpson v. MSA of Myrtle Beach, Inc.*, 373 S.C. 14, 30 (2007)(finding the prohibition against punitive damages oppressive and one-sided); *Hadnot v. Bay, Ltd.*, 344 F.3d 474, 478 n.14

(5th Cir. 2003); *Lowden v. T-Mobile, USA, Inc.*, No. C05-1482P, 2006 WL 1009279 *6-*7 (W.D.Wash. Apr. 13, 2006).

Defendant's Terms deprives Plaintiffs of their right to statutory damages under the FCRA. *See* 15 U.S.C.A. § 1681n (a)(2); (b) (providing for punitive and statutory damages). It also provides Defendant a carte blanche to conduct rampant fraudulent conduct with few, if any, legal repercussions. *See, eg., Dunlap*, 211 W.Va. at 562. The waiver of any damages in excess of actual compensatory damages deprives these plaintiffs, of their right to invoke and employ important legal remedies*, all while shielding the party who procured the term through a take-it-or-leave-it contract. See* 211 W.Va. at 562.[11] For these reasons, the damages limitation in arbitration provision is substantively unconscionable.

### d. The Prohibitions on Joinder and Class Actions Embedded In the Arbitration Clauses Are Unconscionable

Defendant's Terms prohibits joinder or consolidations of arbitrations as well as class actions. *See* Terms (14). The prohibition of joinder and class actions is a factor to be considered when determining whether an arbitration provision is unconscionable. *See Tillman*, 362 N.C. 107. The *Tillman* Court found the prohibition of joinder and class actions to contribute to the financial inaccessibility of the arbitral forum because it deterred the potential plaintiffs from bringing cases, and attorneys from taking case, with low damage amounts in the face of large costs that could not be shared with other plaintiffs. *Id.* at 108. The court also found the prohibition contributed to the one-

---

[11] Any "mutual waiver" of rights by Defendant is illusory as a circumstance in which Defendant, a company, would ever seek to receive punitive damages from Plaintiffs - its customers - is unimaginable. *See Lowden*, 2006 WL 1009279 at *7.

sidedness of the clause because the right to join claims and pursue class actions would only benefits plaintiffs. *See id.* The facts of the present case allow for this court to find the prohibition of joinder and class actions unconscionable for the same reasons as the *Tillman* court. *See id.*

As in *Tillman*, the arbitral forum in this case has the effect of discouraging plaintiffs and attorneys from taking this case because of the small amount allowed for damages. *See* Ex. 18; Ex 19 (stating that absent joinder or a class action, it is unlikely that Plaintiffs could find representation for their claims). Additionally, under the Terms, Plaintiffs were forced to "give up" their right to go to court to assert or defend their rights, bring a class action, or even join their arbitration with other arbitrations. *See* Terms (14). Upon plain reading of the Terms, only the plaintiffs appear to have given up this right. *See* Terms (14). Yet, even if both Plaintiff and Defendant gave up the same rights, Defendant in actuality would not have given up a right of any value, as companies do not typically sue their customers in class action lawsuits. *See Tillman*, 362 N.C. at 108; *see also Omstead*, 533 F.Supp.2d at 1017 (stating class action waivers are "indisputably one-sided as companies do not typically sue their customers in class action lawsuits"). Such one-sidedness, when combined with the discouraging effect of the prohibition should lead this court to find substantive unconscionable.

## V.   The Interdependent Aspects of The Arbitration Provision Should Not Be Severed

This arbitration provision is so permeated with unconscionability that the interdependent aspects of the arbitration clause should not be severed. Under North Carolina law "[w]hen a contract contains a provision which is severable from an illegal

provision and is in no way dependent upon the enforcement of the illegal provision for its validity, such a provision may be enforced." *See Int'l Paper Co. v. Corporex Constrs., Inc.*, 96 N.C.App. 312, 315 (1989). Conversely, if the provisions are interdependent, the provision will not be enforced. *See Jackson v. Assoc. Scaffolders and Equip. Co., Inc.*, 152 N.C.App. 687, 692 (2002); *cf Int'l Paper*, 96 N.C.App. at 315. Many courts have held that all parts of an arbitration agreement are interdependent, making severance impermissible. *See Paladino v. Avnet Computer Tech., Inc.*, 134 F.3d 1054, 1062 (11th Cir. 1998; *see also Hooters of Am., Inc. v. Phillips*, 173 F.3d 933, 940 (4th Cir. 1999). Additionally, courts will not "blue-pencil" or re-write a clause to make it lawful. *See Tillman*, 362 N.C. at 106; *Iberia Credit Bureau, Inc. v. Cingular Wireless LLC*, 379 F.3d 159 (5th Cir. 2004).

## VI.    Plaintiffs Are Entitled To Discovery On The Enforceability Of Defendant's Arbitration Clause

If this Court deems that North Carolina law applies to Plaintiffs' claim and that Plaintiffs have not satisfied their burden of proof to invalidate the arbitration agreement, then Plaintiffs request that the Court allow the parties to conduct discovery of facts that are necessary to determine the validity of the arbitration clause. As is the case here, the validity of an arbitration agreement often hinges on particularized facts. It is well established that under Fed. R. Civ. P. 26(b) Plaintiffs may take discovery to determine the validity of the agreement. *See Int'l Union of Elec., Radio and Mach. Workers, AFL-CIO v. Westinghouse Elec. Corp.*, 48 F.R.D. 298, 300 (S.D.N.Y. 1969)(stating the applicability of all the Federal Rules when deciding the unconscionability of an

arbitration agreement)[12]; *see also Bussian v. DaimlerChrysler Corp.*, 411 F.Supp.2d 614, 621-22 (M.D.N.C. 2006)(stating plaintiff should be allowed a reasonable opportunity to present evidence to aid court in ruling on the unconscionability of the agreement – "which can only occur after an opportunity for discovery") . Parties should be afforded the full opportunity to develop and present a detailed factual record for the Court to adequately evaluate the unconscionability of an arbitration clause. The North Carolina Court of Appeals has even found the absence of such an opportunity to be an abuse of discretion for a trial court to find unconscionability as a matter of law without permitting the parties to present additional evidence. *Garris v. Garris*, 92 N.C. App. 467, 471–72 (1988); *see Carlson v. General Motors Corp.*, 883 F.2d 287, 292-93 (4th Cir. 1989)("…[U]nconscionability claims should but rarely be determined on the bare-bones pleadings-that is, with no opportunity for the parties to present relevant evidence of the circumstances surrounding the original consummation of their contractual relationship").

Courts across the country often remand for discovery on the issue of unconscionability because it requires an "intensely fact-driven inquiry." *See Mitchell v. Kindred Healthcare Operating, Inc.*, No. W2008-00378-COA-R3-CV., 2008 WL 4936505 (Tenn.Ct.App. Nov. 19, 2008); *Wrightson v. ITT Fin. Servs., Inc.*, 617 So.2d 334, 336 (Fla. App. 1993)(equating a motion to compel arbitration to a motion for summary judgment and stating "it is the unusual case where a summary judgment should be granted without first permitting the parties to conduct discovery as to the relevant issues"); *Blair v. Scott Specialty Gases*, 283 F.3d 595, 609 (3d Cir. 2002)(remanding

---

[12] Federal Rule of Civil Procedure 81(a)(6)(B) provides that the Federal Rules of Civil Procedure apply in proceedings relating to arbitration under the Federal Arbitration Act (FAA), 9 U.S.C. §1 *et seq*. *See Westinghouse*, 48 F.R.D. at 300.

because without "some discovery, albeit limited to the narrow issue of the estimated costs of arbitration and the claimant's ability to pay," it was not clear how the claimant could satisfy its burden under *Green Tree*); *Garris*, 92 N.C. App. at 471–72 (remanding for discovery on the issue of unconscionability).

Discovery is so crucial in the context of arbitration disputes that even where plaintiffs have failed to conduct discovery as to unconscionability and consequently have failed to meet their burden, appellate courts, instead of ruling against those plaintiffs, have remanded the arbitration issue and have ordered trial courts to allow discovery. *See Adler v. Fred Lind Manor*, 153 Wash.2d 331, 353-54 (Wash. 2004); *Parilla*, 368 F.3d 269.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests this court DENY Defendant's Motion to Stay and Compel Arbitration.

Dated: December 12, 2008                    Respectfully submitted,


                                  By:        /s/  *Gary W. Jackson*
                                       Gary W. Jackson, NC State Bar No. 13976
                                       Sam McGee, NC State Bar No. 25343
                                       JACKSON & McGee, LLP
                                       521 East Boulevard
                                       Charlotte, NC  28203
                                       Tel:  (704) 377-6680
                                       Fax:  (704) 377-6690

                                       *Liaison Counsel for Plaintiffs and the Class*


                                       FINKELSTEIN THOMPSON LLP
                                       Burton H. Finkelstein
                                       Tracy D. Rezvani

36

1050 30th Street, N.W.
Washington, D.C. 20007
Tel:  (202) 337-8000
Fax: (202) 337-8090

BARNOW AND ASSOCIATES, P.C.
Ben Barnow
One North LaSalle Street, Suite 4600
Chicago, IL  60602
Tel:  (312) 621-2000
Fax: (312) 621-5504

LARRY D. DRURY, LTD.
Larry D. Drury
205 West Randolph, Suite 1430
Chicago, IL  60606
Tel:  (312) 346-7950
Fax: (312) 346-5777

ALLEN ALLEN & TACK
Scott R. Rack
P. O. Box 1409
210 Chickasha Avenue
Chickasha, OK  73023
Tel:  (405) 224-3111
Fax: (405) 224-8312

*Attorneys for Plaintiffs Amy Bercaw,*
*Russell Winsett and Ty Woods*


ANDRUS LIBERTY & ANDERSON LLP
Lori E. Andrus
Micha Star Liberty
Jennie Lee Anderson
1438 Market Street
San Francisco, CA  94102
Tel: (415) 896-1000
Fax: (415) 896-2249

HARKE & CLASBY LLP
Lance A. Harke, P.A.
Howard M. Bushman, Esq.
155 South Miami Avenue, Suite 600
Miami, Florida 33130
Tel: (305) 536-8219

37

Fax: (305) 536-8229

*Attorneys for Plaintiff Paul Shaver and*
*The Proposed Class*

## CERTIFICATE OF SERVICE

I hereby certify that on December 12, 2008, I electronically filed the foregoing Consolidated Brief of Plaintiffs Bercaw, Miller and Shaver in Opposition to Defendant's Motion to Stay and to Compel Arbitration with the Clerk of Court using the CM/ECF system which will send notification of such filing to all disclosed recipients.

This the 12th day of December, 2008.

/s/Gary W. Jackson

Gary W. Jackson