UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
Civil Action No. 3:08-MD-1976

| | |
|---|---|
| IN RE LENDINGTREE, LLC<br>CUSTOMER DATA SECURITY<br>BREACH LITIGATION | REPLY IN FURTHER SUPPORT<br>OF CONSOLIDATED MOTION TO<br>STAY AND TO COMPEL<br>ARBITRATION PURSUANT TO<br>SECTIONS 3 AND 4 OF THE FEDERAL<br>ARBITRATION ACT |

**INTRODUCTION**

Plaintiffs argue that this Court should reach a different conclusion than it did just months ago in Spinozzi v. LendingTree, LLC, 3:08-cv-00229-FDW-DCK (8/21/08) and should refuse to enforce LendingTree's Terms of Use ("TOU"). This is an absurd argument, given that, as Plaintiffs concede, "this court found nothing unconscionable about any of the Defendant's Terms." Bercaw Opposition, p. 10. Plaintiffs present no new law or facts to justify reversal of the Court's earlier decision finding the TOU wholly enforceable. In fact, the Plaintiffs, in their own Affidavits, do not contest that:

- the TOU agreement presented by LendingTree to this Court is the same one to which they agreed;
- each Plaintiff utilized the free matching service provided by LendingTree; and
- each Plaintiff checked a box affirmatively representing to LendingTree that he had read the TOU.

Moreover, Plaintiffs' Affidavits allege no surprise that their claims will be compelled to individual (non-class) arbitration.

Rather, Plaintiffs argue that the public policies of California and Illinois would be offended if North Carolina law were applied and arbitration ordered. Trying to obscure the fact that not one of Plaintiffs is a California resident, Plaintiffs have joined several California defendants. These Defendants have no relationship to the TOU or to the arbitration clause in question. The non-LendingTree Defendants are those who allegedly stole and misused LendingTree's information. Yet, none has filed a responsive pleading and Plaintiffs have not moved for default. These non-LendingTree Defendants were apparently added in an unsuccessful attempt to fabricate venue in California. In actuality, the present case is a dispute between a North Carolina company and several non-California Plaintiffs.

Under the undisputed facts, application of North Carolina law is appropriate. Plaintiffs agreed to a TOU which specifically selected North Carolina as the exclusive venue[1] and which expressly incorporated North Carolina law. There is no basis for this Court to apply California or Illinois law to invalidate the arbitration clause, especially where, as here, the arbitration clause incorporates the current procedures of the American Arbitration Association, including AAA's Consumer-Related Disputes Supplementary Procedures.

Application of North Carolina law compels the same decision here as was reached in Spinozzi. This Court has before it the same arguments, on the same operative facts, as to the same TOU. Only two developments have occurred since these same arguments were first advanced this summer before Your Honor in Spinozzi: (1) this Court found nothing

---

[1] Prior to MDL transfer, LendingTree had filed Motions to Dismiss in California and Illinois. See, Exhibits A and B. LendingTree relies upon this briefing to demonstrate, under the federal law governing forum selection clauses, that venue was improper in the transferor courts.

unconscionable in the TOU and compelled individual (non-class) arbitration; and (2) the MDL Panel considered arguments by these same attorneys seeking to have these cases centralized in California, and instead sent them to North Carolina consistent with the TOU and the great weight of geographic facts.[2] These two developments clearly do not strengthen the position of Plaintiffs' counsel. This Court's prior ruling should apply.

I.   **This Court Correctly Decided the Enforceability of the TOU in <u>Spinozzi</u> Under North Carolina Law**

In <u>Spinozzi</u>, this Court applied North Carolina law to analyze the enforceability of the TOU. All parties agreed that North Carolina law applied, even though none of the Plaintiffs was a North Carolina resident. <u>See</u>, <u>Mitchell</u> <u>Complaint</u> (Oklahoma resident), <u>Carson</u> <u>Amended</u> <u>Complaint</u>, para. 4 (Georgia), <u>Spinozzi</u> <u>Amended</u> <u>Complaint</u>, para. 4 (Pennsylvania). Further, even though <u>Mitchell</u> had been transferred from the Western District of Oklahoma, plaintiff Mitchell did not seek application of Oklahoma's law, and this Court did not apply Oklahoma contract law (or the laws of Georgia or Pennsylvania). Rather, all parties, and the Court, proceeded with the understanding that the law of North Carolina, selected in the TOU, would govern. This was a correct understanding leading to a correct ruling.

   A.   **North Carolina Law Was a Reasonable Choice in the TOU Because It Has a Substantial Relationship to the Parties and Their Dispute and No Other Jurisdiction Has a Materially Greater Interest**

North Carolina courts recognize and enforce choice of law provisions, including where the result is to compel consumers into arbitration. <u>Park v. Merrill Lynch</u>, 159 N.C.App. 120, 122-23 (2003).

---

[2] But for this Court's prompt resolution of the arbitration issue raised in the <u>Spinozzi</u>, that decision would be "law of the case" as to all Plaintiffs. Manual for Complex Litigation (4th) § 20.133.

In deciding whether to enforce a choice of law provision, North Carolina courts have adopted the Restatement (Second) of Conflict of Laws § 187 (1971). Under §187[3]:

> The law of the state chosen by the parties to govern their contractual rights and duties will be applied...unless either:
> (a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice,
> or
> (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue[.]

Plaintiffs cannot challenge that North Carolina has a substantial relationship to the parties and the transaction. LendingTree's "principal office street address" is 11115 Rushmore Drive, Charlotte, North Carolina 28277. Exhibit C, Limited Liability Company Annual Report. LendingTree, LLC is headquartered in Charlotte, North Carolina.[4] Exhibit D, Corporate Affidavit. In Charlotte, LendingTree created and operated its website, accepted Plaintiffs' information, stored and protected that information, and provided its mortgage services. Id. The former employees who allegedly misappropriated that information were North Carolina residents. Exhibit E, Verified North Carolina complaint. LendingTree's supposed failure to maintain reasonable control over the information is alleged to have occurred in North Carolina.

Thus, the North Carolina choice of law must be upheld unless another State has <u>both</u> a materially greater interest in the transaction <u>and</u> a fundamental public policy that would be offended by the application of North Carolina law. Certainly no State has a "materially greater interest" than does North Carolina.

---

[3] Plaintiffs admit that the choice of law approach in California and Illinois is not materially different than that of North Carolina. <u>Bercaw</u> Opposition, p. 9.

[4] Home Loan Center, Inc. d/b/a LendingTree Loans, headquartered in Irvine, California, has not been sued by any of the parties before the Court.

Nor would another state's public policy be offended. Neither California nor Illinois has a particular interest in having its laws apply to this dispute. LendingTree, LLC has no loan operations or offices situated in either state. Plaintiffs from the cases which were filed in or transferred to California hail from Florida (Shaver), Georgia (Baker and Woods), Nevada (Bercaw), New York (Garcia), Oklahoma (Winsett), Pennsylvania (Swearingen), Utah (Larson), and Virginia (Paxton-Collins). Bercaw Complaint, 11-13; Bradley Complaint, 9-12; Garcia Complaint, 9; Shaver Complaint, 11. The only contact that California has is the improper joinder of several unrelated defendants – none of whom was a party to the TOU or entitled to invoke its provisions that are the subject of the pending Motion. Plaintiffs cite to various California statutes, but none of these statutes embodies an interest that will be advanced by invalidating terms of agreements between a North Carolina company and several non-California residents. In several instances, Plaintiffs fail to even state a claim under California law.[5] Similarly, counsel for Miller has identified no fundamental policy of the State of Illinois that would prevent application of North Carolina law. Neither California, Illinois, nor North Carolina require that all consumer contracts are governed by the location of the consumer.

**B. The Van Dusen Decision and Plaintiffs' Current Arguments Do Not Invalidate the North Carolina Choice of Law**

Lacking a serious argument that North Carolina is somehow an unreasonable choice, or that California or Illinois has some materially greater interest, Plaintiffs argue that this Court must automatically apply California and Illinois law. Plaintiffs rely on Van Dusen v. Barrack for the principle that a court accepting a transferred case must apply the substantive law of the case's original jurisdiction. 376 U.S. 612 (1964). However, Van Dusen simply does not apply when

---

[5] For example, Plaintiffs bring suit under California Civil Code §1798.80. That statute, by its terms, protects only California residents. §1798.81.5(a)-(c) See, Exhibit A.

- 5 -

Case 3:08-md-01976-FDW   Document 12   Filed 12/22/2008   Page 5 of 14

the original court lacked proper venue from the beginning. Indeed, prior to transfer, LendingTree moved to dismiss the California and Illinois cases under Rule 12(b)(3). Exhibits A and B.

In Van Dusen, a plane departing from Massachusetts to Pennsylvania crashed in Boston Harbor. Wrongful death lawsuits were filed against the airline, including 40 lawsuits filed in Pennsylvania by Pennsylvania residents as representatives of the Pennsylvania decedents. Jurisdiction and venue properly existed in both Pennsylvania and Massachusetts. The Pennsylvania lawsuits were transferred to federal court in Massachusetts based on the federal *forum non conveniens* statute, 28 USC 1404(a). The question arose whether Massachusetts or Pennsylvania substantive law would control the resolution of the wrongful death lawsuits. The Supreme Court ruled that Pennsylvania law continued to apply, notwithstanding the transfer of the cases, noting, in particular, that a contrary decision could result in inappropriate forum shopping. Id. at 636.

The facts of these cases are radically different, and Plaintiffs here are invoking Van Dusen to preserve the very forum shopping that Van Dusen was designed to prevent. California has no legitimate connection to these parties, disputes, and claims, which, in light of the binding forum selection and choice of law clauses, made venue in the original courts improper.

It is well accepted that Van Dusen does not require application of the original jurisdiction's substantive law when venue was not proper in that jurisdiction; otherwise, plaintiffs would be encouraged to forum shop. For example, in Plowman v. U.S. Dept. of Army, venue in the transferor court, the Northern District of California, had been improper. 698 F.Supp. 627, 639 n. 32 (E.D.Va. 1988)(citations omitted). Therefore, the court distinguished Van Dusen, and instead applied the law of the transferee court's forum state, Virginia. "To hold

otherwise would allow plaintiff to file claims in a court without proper venue simply to ensure the application of favorable laws of that forum." Id. "If the state law of the forum in which the action was originally commenced is applied following [a transfer for improper venue], the plaintiff could benefit from having brought the action in an impermissible forum. Plaintiffs would thereby be encouraged to file their actions in the federal district court where the state law was the most advantageous, regardless of whether that district court was a proper forum." Ellis v. Great Southwestern Corp., 646 F.2d 1099, 1109 (5th Cir. 1981). The TOU between LendingTree and each Plaintiff contains a binding forum selection clause which allows disputes between the parties to be heard only in the courts of Mecklenburg County, North Carolina, and requires the application of North Carolina law. Because venue was improper in the original transferor courts, Van Dusen does not apply.[6] This Court should use North Carolina law to determine whether the TOU is wholly enforceable as to Plaintiffs.

## II. Under North Carolina Law, the TOU is Enforceable, and Plaintiffs' Most Recent Arguments Do Not Change The Spinozzi Result

This Court's prior decision, applying North Carolina law, found the TOU and its arbitration clause enforceable. This Court found that "Plaintiffs, through the objective manifestation of their actions, agree to LendingTree's TOU, including the agreement to arbitrate." Exhibit F, T54:25-55:2. This Court found that the TOU passed the tests set forth in Tillman v. Commercial Credit Loans, Inc. 655 S.E.2d 362 (N.C. 2008). The Court noted that for a contract to be rescinded as unconscionable, both procedural and substantive unconscionability must be found. T56:17-19.

---

[6] When (as here) the transferor court has not ruled on the propriety of venue or jurisdiction, the transferee court must determine whether venue and jurisdiction would have been proper in the transferor court in order to decide which State's law will apply. Davis v. Costa Gavras, 580 F.Supp. 1082, 1086 (S.D.N.Y. 1984).

### A. No Procedural Unconscionability

Under North Carolina law, three factors for procedural unconscionability have been articulated: unfair surprise, lack of meaningful choice, and inequality of bargaining power. T 56. The Court found that despite an inequality of bargaining power, no procedural unconscionability existed. The Court found "no facts indicating unfair surprise." T58:14-15. To the contrary, "plaintiffs were able to peruse LendingTree's website at their leisure." T58:18-20. And, "even a cursory perusal of those terms would have revealed that there was an arbitration clause[.]" T59:15-16. The Court also found no lack of meaningful choice in the diverse and competitive residential mortgage funding market, which includes both online and traditional lenders, brokers, and other service providers.

Plaintiffs' counsel argue, not that their clients actually were unfairly surprised, but that a potential for surprise existed because of the length of LendingTree's documents. As this Court found, those documents could be reviewed "at their leisure". Furthermore, "the very first paragraph reads in bold-faced type, **"This agreement contains an agreement to arbitrate all claims and disclaimers of warrants and liability."** T59:15-16. Moreover, the length of the documentation provided is largely the result of federal and State consumer protection laws, which require extensive disclosures to borrowers.

### B. No Substantive Unconscionability

Per Plaintiffs, the Court was incorrect in finding no substantive unconscionability. Plaintiffs argue, for example, that the TOU provisions requiring the loser in any litigation to pay all counsel fees, and prohibiting joinder of claims and bringing or participating in a class action are substantively unconscionable. In <u>Spinozzi</u>, this Court specifically rejected these arguments,

finding that these provisions "are hardly so oppressive that no reasonable person would [accept] them on the one hand, and no honest and fair person would [make] them on the other." T61:6-11.

Nonetheless, Plaintiffs now present boilerplate Affidavits contending that they have low incomes. The household incomes on the Affidavits range from $1,080 net per month (Ms. Bercaw) to $3,400 per month (Ms. Paxton-Collis). This Affidavit information is not sufficient to show that AAA arbitration is unaffordable to Plaintiffs. Under the applicable AAA rules[7], "If the consumer's claim or counterclaim does not exceed $10,000, then the consumer is responsible for one-half the arbitrator's fees *up to a maximum of $125*." Exhibit H, Consumer Arbitration Costs (emphasis added). AAA has further reserved for itself the right to determine the allocation of costs and expenses between the consumer and the company, without regard to pre-dispute agreements. Exhibit I, Consumer-Related Disputes Supplementary Procedures. While AAA has not promulgated bright-line rules for these determinations, AAA does note that, "In some cases, the need to ensure reasonable costs for the Consumer will require the Provider of goods or services to subsidize the costs of ADR which is mandated by the agreement[.]" Exhibit J, Consumer Due Process Protocol. AAA makes the "Practical Suggestion," which LendingTree intends to follow as to these Plaintiffs, that, "[i]n the event that an ADR procedure is mandated by the Provider of goods and services and the Consumer demonstrates an inability to pay all or part of the costs of the procedure, the Provider should front such costs subject to allocation in the

---

[7] Plaintiffs' entire argument concerning burden and cost is premised on an incorrect reading of AAA's Commercial Arbitration Rules. Those Commercial Arbitration Rules explicitly and emphatically state that, "The AAA applies the Supplementary Procedures for Consumer-Related Disputes to arbitration clauses in agreements between individual consumers and businesses where the business has a standardized, systematic application of arbitration clauses[.]" See, Exhibit G, Commercial Arbitration Rules, available at http://www.adr.org/sp.asp?id=22440. Plaintiffs analyze AAA arbitration as though these pro-consumer rules did not exist.

arbitration award or mediation settlement." Id. Notably, Plaintiffs do not allege they are unable to pay $125, the maximum amount that each would be liable for under AAA rules.

"The facts available to the Court at this time do not provide a basis for concluding that the [consumer] likely will be forced to shoulder costs that they cannot bear. And, speculation about the way that the [arbitrator] might handle the [consumer's] complaint does not justify ruling that the [consumer's] arbitration agreement is unconscionable." March v. Tysinger Motor Co., 2007 WL 4358339 at *5 (E.D.Va. 2007). Thus, this Court should enforce the TOU as agreed to by Plaintiffs and mandate arbitration, as it did in Spinozzi.

### III. No Further Discovery is Required

Apparently recognizing the inevitability that the TOU will be enforced as written, as in Spinozzi, Plaintiffs attempt to prolong the battle by arguing that additional discovery into the relative usage of the arbitration clause is required. Plaintiffs suggest it would be unconscionable for Plaintiffs' claims to be arbitrated while LendingTree pursues in court those that allegedly misappropriated the data. This is an absurd argument; LendingTree has no option but to seek relief against the thieves in court, but this does not somehow allow Plaintiffs to disregard their promise to arbitrate; this would in effect impose on LendingTree the Hobson's Choice of foregoing its arbitration clause or foregoing legal relief against the information thieves.

In any event, to the extent Tillman suggests that it is appropriate to make such an inquiry into the relative usage of this arbitration provision, Tillman is preempted by the FAA. The FAA requires that state law treat arbitration agreements no worse than any other sort of contract, preempts a state law defense which applies only against arbitration agreements. See, e.g., Aspen Spa Props., LLC v. Int'l Design Concepts, LLC, 527 F.Supp.2d 469 (E.D.N.C. 2007) (finding FAA preempted North Carolina's statute forbidding out-of-state arbitrations); accord Schultz v.

- 10 -
Case 3:08-md-01976-FDW    Document 12    Filed 12/22/2008    Page 10 of 14

AT & T Wireless Servs., Inc., 376 F.Supp.2d 685, 689-60 (N.D.W.Va. 2005) (finding FAA preempted West Virginia decision which had imposed heightened scrutiny on arbitration agreements). Therefore, such discovery aimed at usage is improper and futile, as it will not change the result on this Motion. No other discovery is needed as to jurisdictional facts/ contacts as they are public record, uncontested or issues of law.

LendingTree asks the Court to stay all judicial proceedings and compel each Plaintiff to binding individual (non-class) arbitration of any claims against LendingTree.

December 22, 2008.

Respectfully submitted,

s/ Robert E. Harrington
Robert E. Harrington
N.C. Bar No. 26967
rharrington@rbh.com
Jonathan C. Krisko
N.C. Bar No. 28625
jkrisko@rbh.com

**ROBINSON, BRADSHAW & HINSON, P.A.**
101 North Tryon Street, Suite 1900
Charlotte, North Carolina 28246-1900
Telephone: (704) 377-2536
Facsimile: (704) 378-4000

Mark S. Melodia (admitted *pro hac vice*)
mmelodia@reedsmith.com
Paul J. Bond (admitted *pro hac vice*)
pbond@reedsmith.com

**REED SMITH LLP**
Princeton Forrestal Village
136 Main Street
Princeton, New Jersey 08540
(609) 514-6015

*Attorneys for Defendants*
*Home Loan Center, Inc. d/b/a LendingTree*
*Loans and LendingTree, LLC*

## CERTIFICATE OF COMPLIANCE WITH
## <u>WORD COUNT LIMITATIONS</u>

The undersigned hereby certifies, in accordance with the Text-Only Order entered on December 18, 2008 by the Honorable Frank D. Whitney, that this **REPLY IN FURTHER SUPPORT OF CONSOLIDATED MOTION TO STAY AND TO COMPEL ARBITRATION PURSUANT TO SECTIONS 3 AND 4 OF THE FEDERAL ARBITRATION ACT** contains 3000 words, including footnotes and excluding the caption, signature block and this certification, as verified using the Word Count tool in Microsoft Word 2003.

December 22, 2008.

                                         <u>s/ Robert E. Harrington</u>
                                         Robert E. Harrington
                                         N.C. Bar No. 26967
                                         <u>rharrington@rbh.com</u>

                                         **ROBINSON, BRADSHAW & HINSON, P.A.**
                                         101 North Tryon Street, Suite 1900
                                         Charlotte, North Carolina 28246-1900
                                         Telephone: (704) 377-2536
                                         Facsimile: (704) 378-4000

                                         *Attorneys for Defendants*
                                         *Home Loan Center, Inc. d/b/a LendingTree*
                                         *Loans and LendingTree, LLC*

- 12 -

Case 3:08-md-01976-FDW     Document 12     Filed 12/22/2008     Page 12 of 14

# CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Jennie Lee Anderson
jennie@libertylaw.com

Jon Jason Lambiras
jlambiras@bm.net

Lori Erin Andrus
lori@libertylaw.com

Micha Star Liberty
micha@libertylaw.com

Ilan J. Chorowsky
ichorowsky@gmail.com

Jason Brant Reynolds
jasrey@aol.com

Robyn C. Crowther
crowther@caldwell-leslie.com

Rosemary M. Rivas
rrivas@finkelsteinthompson.com

Larry D. Drury
ldrurylaw@bm.net

James R. Rowe
rowelegal@gmail.com

Michael Todd Fantini
mfantini@bm.net

Jamie L. Sheller
jlsheller@sheller.com

Billy D. Griffin
oculaw2@aol.com

Gary W. Jackson
gjackson@ncadvocates.com

Jerome Noll
jnoll@mdpcelaw.com

Marina C. Santini
msantini@reedsmith.com

David Z. Smith
dzsmith@reedsmith.com

Felicia Yu
fyu@reedsmith.com

and I hereby certify that I have mailed the document to the following non CM/ECF participants:

Jeffrey Carlton
1311 Mamaronek Ave.
White Plains, NY 10605

David Molinari
Bremer Whyte Brown & O'Meara LLP
501 West Broadway
Suite 1750
San Diego, CA 92101

Sherrie R. Savett
1622 Locust Street
Philadelphia, PA 19103

December 22, 2008.

                                            s/ Robert E. Harrington
Robert E. Harrington
ROBINSON, BRADSHAW & HINSON, P.A.
101 North Tryon Street, Suite 1900
Charlotte, North Carolina 28246-1900
(704) 377-2536
rharrington@rbh.com