**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION**

| | |
|---|---|
| IN RE LENDING TREE, LLC<br>CUSTOMER DATA SECURITY BREACH<br>LITIGATION<br>_____ | Civil Action No.: 3:08-MD-1976 |

**THE BERCAW-MILLER-SHAVER GROUP PLAINTIFFS' MEMORANDUM
OF LAW IN SUPPORT OF PETITION FOR CERTIFICATION FOR
APPEAL PURSUANT TO 28 U.S.C. § 1292(b)**

**INTRODUCTION**

Following extensive briefing by the parties and a hearing, the Court ruled from the bench on February 5, 2009 that Plaintiffs were required to arbitrate all claims raised against Lending Tree in the Consolidated Amended Class Complaint. *See* Transcript, p. 75, attached hereto as Exhibit 1. In reaching this decision, the Court found that the Lending Tree forum selection clause, which contained a class action waiver provision, was not unconscionable under California law, and that California does not have a materially greater interest in this litigation than North Carolina. *See* Transcript, pp. 67-71. Plaintiffs, of course, disagree with these rulings. Plaintiffs respectfully submit that both of these rulings are subject to substantial disagreement by California courts and other federal courts applying California law, as discussed below, and that immediate appeal should be permitted so that the Fourth Circuit can resolve the issues.

**ARGUMENT**

**I.    Standards for Certification Pursuant to 28 U.S.C. § 1292(b)**

28 U.S.C. § 1292(b) provides an avenue for interlocutory appeal from a non-final order, either on a court's own initiative or pursuant to a request for certification by a

1

party. The standards governing a court's decision to certify a legal issue or ruling for immediate appeal are set forth in the statute itself:

> When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a **controlling question of law** as to which **there is substantial ground for difference of opinion** and that an immediate appeal from the order **may materially advance the ultimate termination of the litigation**, he shall so state in writing in such order. The Court of Appeals which would have jurisdiction of an appeal of such action may thereupon, in its discretion, permit an appeal to be taken from such order, if application is made to it within ten days after the entry of the order.

28 U.S.C. § 1292(b) (emphasis added).

The rationale for certification of a non-final order for immediate appeal, and the considerations to be applied to a decision to certify, were discussed at length in *Howes v. W.R. Peele, Sr. Trust*, 889 F.Supp 849 (E.D.N.C. 1995) (Britt, J.):

> The purpose of § 1292(b) is to allow for an early appeal of an order when appellate-level resolution of issues addressed by that order may provide more efficient disposition of the litigation. *Ford Motor Credit Co. v. S.E. Barnhart & Sons, Inc.,* 664 F.2d 377, 380 (3d Cir.1981). . . . [T]he application of the statute in practice is not straightforward because of the great flexibility it provides to a district court in deciding whether to certify an order for appeal. This decision of whether to certify is wholly within the discretion of the court issuing that order. *Graves v. C & S Nat'l Bank of Ga.,* 491 F.Supp. 280, 283 (D.S.C.1980) (citing *Bachowski v. Usery,* 545 F.2d 363, 368 (3d Cir.1976)). In deciding whether to certify an order for interlocutory appeal, courts employ the two-prong test established by the language of § 1292(b). *North Carolina ex rel. Long v. Alexander & Alexander Servs., Inc.,* 685 F.Supp. 114, 115 (E.D.N.C.1988).
>
>          \*      \*      \*
>
> The question of what constitutes a "controlling question of law" has given courts somewhat more difficulty because the courts have devised no set formula for making such a determination and, as a result, this criterion tends to blend with the second prong of the test for certification, which speaks to the potential for materially advancing the litigation. 16 Wright, et al., *Federal Practice and Procedure* § 3930, at 159. At the very least, a question is

> controlling if its incorrect disposition would require reversal of a
> final judgment for further proceedings. *Id.* (citing *Katz v. Carte
> Blanche Corp.,* 496 F.2d 747, 755 (3d Cir.1974)).

*Id.* at 851-53.

Plaintiffs respectfully submit that the Court's February 5, 2009 ruling, requiring Plaintiffs to arbitrate all pending claims against Lending Tree, meets the standards for certification, and that the particular facts of this case make certification of the Court's arbitration ruling especially appropriate.

## II. The Court's Ruling Granting a Stay and Requiring Plaintiffs to Arbitrate Their Claims Against Lending Tree Involves a Controlling Question of Law for Which There is a Substantial Ground for Difference of Opinion

### A. The Ruling Involves a Controlling Question of Law

While there is no set formula for determining when a question of law is controlling for the purposes of § 1292(b), it has been widely accepted that a question is controlling "if its incorrect disposition would require reversal of the final judgment for further proceedings." *Howes*, 889 F. Supp. at 852-853, citing 16 Wright, et. al., *Federal Practice and Procedure* § 3930, and *Katz v. Carte Blanche Corp.*, 496 F.2d 747, 755 (3rd Cir. 1974). "A controlling question of law, for Section 1292(b) purposes, is 'every order which, if erroneous, would be reversible error on final appeal.' It is not required that reversal of the order terminate the litigation or that the order be on the claim's merits. 'Controlling' means 'serious to the conduct of the litigation, either practically or legally.' From the practical standpoint, saving the district court's time and the litigant's expenses is a 'highly relevant factor.'" *Norvergence, Inc. v. Nortel Networks, Ltd.*, 2008 WL 5136842, at *2 (D.N.J., Dec. 5, 2008) (slip copy) (citing *Katz, supra*).

3

It has previously been held that an order compelling arbitration is controlling, and thus, subject to § 1292(b) certification, because it effectively transfers the case to another forum for resolution. *See Vimar Seguros Y Reaseguros v. M/V Sky Reefer*, 1993 WL 137483, at *5 (D. Mass. 1993) ("In this case, the Order [compelling arbitration] should be regarded as 'controlling' because it requires the dispute to be referred to another tribunal for decision."), *aff'd* (on certified appeal), 29 F.3d 727 (1st Cir. 1994), *aff'd*, 515 U.S. 528, 115 S.Ct. 2322 (1995). *See generally Kuehner v. Dickenson & Co.*, 84 F.3d 316, 318 (9th Cir. 1996) (order compelling arbitration and staying case certified for immediate appeal by district court, and appeal accepted by circuit court of appeals); *cf. Johnson v. Circuit City Stores*, 148 F.3d 373, 376 (4th Cir. 1998) (order denying motion to compel arbitration certified by district court, and appeal accepted by circuit court).

The Court's February 5, 2009 ruling, granting Lending Tree's motion to stay and to compel arbitration, plainly meets the 'controlling decision' standard. As a result of the Court's decision, Plaintiffs must now – collectively or individually – prosecute their claims against Lending Tree in an entirely different forum (arbitration), subject to the Court's review of any arbitration award(s) that result.[1] Plaintiffs would then have to arbitrate their claims, then challenge the initial ruling sending their claims to arbitration on plenary appeal, and if successful, the results of the arbitration would be thrown out, and pre-trial proceedings against Lending Tree would commence anew in this Court.

Stated otherwise, if the Court's arbitration ruling was an "incorrect disposition," as Plaintiffs maintain it was, reversal of the ultimate final judgment and remand for further proceedings would be required, making this a classic case for interlocutory review

---

[1] *See generally, ATAC Corp. v. Arthur Treachers, Inc.*, 280 F.3d 1091, 1097-98 (6th Cir. 2002) (arbitration order staying proceedings and administratively closing case was not sufficiently final given that case was subject to re-opening when arbitration was completed, to permit court review of arbitration awards).

4

under § 1292. *See supra Howes; Katz; Norvergence. See also* 16 Wright, et. al., *Federal Practice and Procedure* § 3930 ("The advantages of immediate appeal increase with the probabilities of prompt reversal, the length of the district court proceedings saved by reversal of an erroneous ruling, and the substantiality of the burdens imposed on the parties by a wrong ruling.").

> B. There is a Substantial Ground for Disagreement Regarding the Arbitration Ruling

In deciding that the Lending Tree arbitration clause is enforceable here, the Court made two key findings: 1) that the clause did not contravene California public policy; that is, the clause was not unconscionable under California law; and 2) California does not have a materially greater interest in this litigation than North Carolina. *See* Transcript, pp. 67-71. Plaintiffs respectfully submit that there is substantial ground for disagreement as to both of these findings, as California decisional law strongly suggests that these issues likely would be decided differently by a California court or another federal court applying California law.

> 1   The Substantive Unconscionability Question

On the unconsionability issue, the Court found that Plaintiffs failed to establish all three aspects of what it described as the "three-part test" under *Discover Bank*[2] for substantive unconscionability in California. *See* Transcript, pp. 67-70.[3] This ruling

---

[2] *Discover Bank v. Superior Court*, 30 Cal.Rptr.3d 76 (Cal. 2005).
[3] As discussed in the prior briefing, California courts apply a "sliding scale" as between procedural and substantive unconscionability, such that a strong showing of procedural unconscionability greatly reduces a party's need to further show substantive unconscionability. Plaintiffs' Opposition, p. 11. *See Shroyer v. New Cingular Wireless, Inc.*, 498 F.3d 976, 981-982 (9th Cir. 2007) ("California courts apply a 'sliding scale,' so that the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa."); *Szetela v. Discover Bank*, 97 Cal. App.4th 1094, 1099-1100 (Cal. Ct. App. 4th 2002) ("[T]he more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa."). Plaintiffs' burden regarding

deviates substantially from several prior cases decided under California law, which were cited in Plaintiffs' memorandum. Specifically, it is established law in California that a party need not meet all three of the criteria for substantive unconscionability to make a forum selection clause unenforceable, and, in fact, it has previously been held that satisfaction of only one of the three can be sufficient. Because there is no requirement that all three parts of the *Discover Bank* "test" be met for substantive unconscionability to be established, the Court's contrary holding raises a substantial ground for disagreement as to this aspect of the Court's arbitration decision.

**"[T]here are most certainly circumstances in which a class action waiver is unconscionable under California law despite the fact that all three parts of the *Discover Bank* test are not satisfied[.]"** *Shroyer v. New Cingular Wireless*, 498 F.3d at 983 (emphasis added). The *Shroyer* decision is consistent with the holdings of California state courts which have likewise held that satisfaction of a single substantive criteria can be sufficient to preclude enforcement of a forum selection clause. For example, in *America Online, Inc. v. Superior Court*, 90 Cal.App.4th 1, (Cal. Ct. App.2d 2001), citing the importance of consumer class action jurisprudence in consumer actions involving relatively small amounts of money, the court found that inclusion of a class action waiver in a forum selection clause is, by itself, grounds to refuse to enforce the clause based on unconscionability. *Id.* at 17-18 ("[T]he right to seek class action relief in consumer cases has been extolled by California courts. A notable example is the opinion in *Vasquez* [] . . . . That this view has endured over the last 30 years is of little surprise given the importance class action consumer litigation has come to play in this state. In light of that

---

substantive unconscionability should therefore have been substantially eased, though there was no indication in the Court's ruling that such consideration or adjustment had been made.

history, we cannot accept AOL's assertion that the elimination of class actions for consumer remedies if the forum selection clause is enforced is a matter of insubstantial moment. **The unavailability of class action relief in this context is sufficient in and by itself to preclude enforcement of the TOS forum selection clause**.") (emphasis added).

Similarly, California courts have held that where, as here, a class action waiver is entirely one-sided, that is, only one party gives up a meaningful right to class litigation or arbitration, a strong case for substantive unconscionability is made based on that basis alone:

> Although styled as a mutual prohibition on representative or class actions, it is difficult to envision the circumstances under which the provision might negatively impact Discover, because credit card companies typically do not sue their customers in class action lawsuits. This provision is clearly meant to prevent customers, such as Szetela and those he seeks to represent, from seeking redress for relatively small amounts of money, such as the $29 sought by Szetela. Fully aware that few customers will go to the time and trouble of suing in small claims court, Discover has instead sought to create for itself virtual immunity from class or representative actions despite their potential merit, while suffering no similar detriment to its own rights. . . . While the advantages to Discover are obvious, such a practice contradicts the California Legislature's stated policy of discouraging unfair and unlawful business practices, and of creating a mechanism for a representative to seek relief on behalf of the general public as a private attorney general. (See, e.g., Bus. & Prof. Code, § 17200 et seq.) It provides the customer with no benefit whatsoever; to the contrary, it seriously jeopardizes customers' consumer rights by prohibiting any effective means of litigating Discover's business practices. This is not only substantively unconscionable, it violates public policy by granting Discover a "get out of jail free" card while compromising important consumer rights.

*Szetela v. Discover Bank*, 97 Cal. App.4th at 1101, cited with approval in *Discover Bank v. Superior Court*, 30 Cal.Rptr.3d 76, 84 (Cal. 2005).

In marked contrast to these California decisions, the Court here required Plaintiffs to meet all three criteria for substantive unconscionability, and, having found that Plaintiff did not meet all three, ruled against them.[4] The Court's strict adherence to the purported "three-part test" thus reveals that there are substantial grounds for disagreement on the Court's unconscionability findings.

### 2      The 'Materially Greater Interest' Question

Though it found that the forum selection clause was not unconscionable under California law, the Court nonetheless further decided that "it is abundantly clear [] that California's interest in this litigation is not materially greater than North Carolina's." *See* Transcript, p. 70. There are substantial grounds for disagreement on the Court's resolution of this issue as well, as the case law in California strongly indicates that a different conclusion would be reached there.

When addressing the 'materially greater interest' test, California courts have put great emphasis on the domicile of the parties, the place of the wrong, and which state's laws are at issue (if any). *See generally*, *Douglas v. United States Dist. Court*, 495 F.3d 1062, 1067 n.2 (9th Cir. 2007); *Discover Bank v. Superior Ct. of Los Angeles*, 134 Cal.App.4th 886, 895 (2005); *J.P. Morgan & Co., Inc. v. Superior Court*, 113 Cal.App.4th 195, 221 (2003); *see also* Transcript, p. 70 (citing these same considerations).

With respect to the domicile of the parties, the Court essentially limited its analysis to the representative Plaintiffs and Lending Tree (which it dubbed the "key" defendant), all but ignoring the presence of the five (5) California-based defendants in

---

[4] Plaintiffs maintain that they in fact met all three requirements applied by the Court, but will not reargue this point given the limited scope of a § 1292(b) petition.

this case,[5] and also ignored the putative class of California consumers Plaintiffs seek to represent in this litigation. When all of the parties in interest are properly considered, the domicile issue weighs strongly in favor of California.

It was not disputed here that Plaintiffs have brought several claims against Lending Tree and the remaining California defendants under California state consumer protection laws. *See* Transcript, pp. 49-51. California obviously has a greater interest in overseeing the prosecution of its laws than North Carolina, so this factor too raises ground for disagreement.

As to the place of the wrong, the Court basically assumed that the birthplace of the wrongdoing was North Carolina, rather than California, because Lending Tree has its "home office" there - - even though all of the recipients of the protected consumer information are located in California and the information was thus received there. There was simply no basis in the record for the Court to conclude that merely because data was sent from North Carolina (even assuming that it was),[6] that the wrongdoing emanated from there. It is certainly possible that the data was sent as a result of contacts or requests initiated by persons in California, rather than vice-versa, but discovery has not yet progressed to the point that this question can be answered definitively.

In this regard, it is also noteworthy that Lending Tree itself alleged in the California action it filed against the California-based defendants that the wrongful conduct occurred in California. *See* Transcript, p. 42. Plaintiffs therefore submit that at

---

[5] *See* Transcript, pp. 48-49 (listing California defendants: Newport Lending Corp.; Southern California Marketing Corp.; Home Loan Consultants, Inc.; Chapman Capital, Inc.; and Sage Credit Co.).
[6] Lending Tree's Irvine, California headquarters is, in fact, larger than its North Carolina "home office." *See* Transcript, pp. 41-42.

9
Case 3:08-md-01976-FDW   Document 27   Filed 03/16/2009   Page 9 of 15

best, this factor is in equipoise, and the other two factors, which favor California, should have controlled.

For these reasons, Plaintiffs respectfully submit that there are substantial grounds for disagreement regarding the Court's 'materially greater interest' ruling here.

### III. Immediate Appeal of the Court's Stay Ruling May Advance the Ultimate Termination of the Litigation

As the Court is aware, there are several additional defendants remaining in this litigation, none of whom could take advantage of the Lending Tree arbitration clause, including the class action waiver provision therein. *See* Transcript, pp. 48-49. The presence of these additional defendants, Plaintiffs submit, means that immediate appeal of the Court's arbitration ruling likely will advance the ultimate termination of the litigation, as a reversal would eliminate the dual-track proceedings that the ruling creates.

The MDL litigation has not been terminated as a result of the Court's arbitration decree; Plaintiffs will continue litigating their claims against the additional defendants, and the Court will preside over these consolidated pre-trial proceedings. It is only when these cases are ready for trial (assuming no pre-trial disposition) that the Court's responsibility over the litigation will end, as the individual actions are transferred back to the transferor courts for trial. The Court's arbitration ruling necessarily means that Plaintiffs will be arbitrating their claims against Lending Tree concurrent with the on-going MDL proceedings against the non-Lending Tree defendants. Such dual-track proceedings represent a tremendous waste of party and system resources, especially if, as here, a reversal of the Court's arbitration ruling is possible.[7]

---

[7] The presence of the additional defendants distinguishes this case from *Stephens v. Wachovia Corp.*, 2008 WL 1820928, at *4 (W.D.N.C. 2008) (Reidinger, J.), where the court held that interlocutory appeal of an arbitration order would not materially advance the litigation.

A reversal of the Court's ruling would mean that all claims against all defendants could be prosecuted in a single forum (pre-trial), which would no doubt save a tremendous amount of time and resources. Consolidation involving all claims and all defendants also significantly increases the possibility of a global compromise resolution, which may not be attainable while litigation and arbitration are proceeding on parallel tracks. These very considerations were found to merit immediate appeal of an arbitration ruling in a consumer class action case in *Hoffman v. Citibank (South Dakota), N.A.*, 2007 WL 5659406, at *4 (C.D. Cal. 2007):

> Plaintiff argues immediate appeal of the Arbitration Order will materially advance the litigation since both her individual and class claims are currently stayed pending arbitration. (Motion 16:16-19.) Defendant contends arbitration is a more reasonable and efficient alternative method of materially advancing the litigation toward a final resolution, at which point, an appeal from final judgment could then be taken. (Opposition 13:19-24.) Again, the Court agrees with Plaintiff.
> 
> \*        \*        \*
> 
> **Here, the litigation is stayed pending the submission of Plaintiff's claims to arbitration on an individual basis. There is no pending trial, and discovery has not been completed. Resolution of the choice of law question in favor of Plaintiff could materially advance the litigation by allowing Plaintiff's claims to move forward without an unnecessary arbitration, giving the parties an opportunity to settle or dismiss without having to wait for an appeal following final judgment.** The Ninth Circuit has previously accepted interlocutory appeals from orders compelling arbitration while court proceedings are stayed, implying such appeals do have the potential to materially advance the litigation. *See Kuehner v. Dickinson & Co.,* 84 F.3d 316 (9th Cir.1996).

(Emphasis added).

On the other hand, absent an immediate appeal, the Court would, in addition to overseeing the consolidated pre-trial proceedings involving the non-Lending Tree defendants, retain jurisdiction to review any and all awards entered in the Lending Tree

arbitration.[8] Whether these awards are individual or class-based, plenary appeal (or appeals) could be filed following the Court's review, including a review of the Court's initial arbitration decision. If reversed, the Court would then be required to oversee pre-trial proceedings of Plaintiffs' class claims against Lending Tree, which likely would have been completed had interlocutory review been granted. Accordingly, immediate appeal of the arbitration order at issue represents an opportunity to advance the ultimate termination of the MDL proceedings, and to avoid the needless expenditure of substantial time and other resources associated with parallel proceedings.

In addition, immediate appeal is merited here because this litigation, as to all defendants, is in its infancy. Discovery has not yet commenced, as against Lending Tree or the remaining defendants, and significant pre-trial proceedings remain. Accordingly, permitting the Fourth Circuit to review the Court's arbitration decision will in no way delay the ultimate transfer of these actions to the transferor districts for trial, a consideration that otherwise cuts against immediate review. *See e.g.*, 16 Wright, et. al., *Federal Practice and Procedure* § 3930 ("Delay may be a particularly strong ground for denying appeal if certification is sought from a ruling made shortly before a trial expected to be brief."); *Hoffman*, 2007 WL 5659406, at *4 (granting certification, noting that no trial date was set and discovery had not been completed).

---

[8] Plaintiffs anticipate that Lending Tree will argue that class-wide arbitration is not available under its contract with the members of the putative class. If successful, this argument likely would result in a series of individual arbitrations being conducted. Regardless of how long this process might take, the Court would retain jurisdiction to review each of the awards. *See Arthur Treachers, Inc.*, 280 F.3d at 1097-98 (administrative order closing case would be lifted for court to review resulting arbitration awards). This would, in turn, prolong the proceedings in this Court.

Because immediate review may advance the ultimate termination of these MDL proceedings, Plaintiffs respectfully submit that the Court should certify its February 5, 2009 ruling pursuant to §1292.

## **CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that the Court certify for immediate review its February 5, 2009 ruling requiring Plaintiffs to arbitrate all claims raised against Lending Tree in this litigation. The Court's Order meets the standards for certification set forth in 28 U.S.C. §1292(b), and, Plaintiffs submit, immediate review will ultimately avoid the inefficiencies and inconsistencies associated with having the claims raised in Plaintiffs' Complaint prosecuted in two very different forums: arbitration (class or individual) against Lending Tree, and continued litigation here against the remaining defendants.

Dated: March 16, 2009.

       Respectfully submitted,

By:   /s/ *Gary W. Jackson*_____
      Gary W. Jackson, NC State Bar No. 13976
      Sam McGee, NC State Bar No. 25343
      JACKSON & McGee, LLP
      521 East Boulevard
      Charlotte, NC 28203
      Tel: (704) 377-6680
      Fax: (704) 377-6690
      *Liaison Counsel for Plaintiffs and the Class*

      FINKELSTEIN THOMPSON LLP
      Burton H. Finkelstein
      Tracy D. Rezvani
      1050 30th Street, N.W.
      Washington, D.C. 20007

Tel: (202) 337-8000
Fax: (202) 337-8090

BARNOW AND ASSOCIATES, P.C.
Ben Barnow
One North LaSalle Street, Suite 4600
Chicago, IL 60602
Tel: (312) 621-2000
Fax: (312) 621-5504

LARRY D. DRURY, LTD.
Larry D. Drury
205 West Randolph, Suite 1430
Chicago, IL 60606
Tel: (312) 346-7950
Fax: (312) 346-5777

ALLEN ALLEN & TACK
Scott R. Rack
P. O. Box 1409
210 Chickasha Avenue
Chickasha, OK 73023
Tel: (405) 224-3111
Fax: (405) 224-8312

*Attorneys for Plaintiffs Amy Bercaw,*
*Russell Winsett and Ty Woods*

ANDRUS ANDERSON LLP
Lori E. Andrus
Jennie Lee Anderson
155 Montgomery Street, Suite 900
San Francisco, CA 94104
Tel: (415) 986-1000
Fax: (415) 986-1474

HARKE & CLASBY LLP
Lance A. Harke, P.A.
Howard M. Bushman, Esq.
155 South Miami Avenue, Suite 600
Miami, Florida 33130
Tel: (305) 536-8219
Fax: (305) 536-8229

*Attorneys for Plaintiff Paul Shaver and*
*The Proposed Class*

14

**CERTIFICATE OF SERVICE**

      I hereby certify that on March 16, 2009, I electronically filed the foregoing THE BERCAW-MILLER-SHAVER GROUP PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF PETITION FOR CERTIFICATION FOR APPEAL PURSUANT TO 28 U.S.C. § 1292(b), AND SUPPORTING with the Clerk of Court using the CM/ECF system which will send notification of such filing to all disclosed recipients.

                                                    /s/Gary W. Jackson
                                                    Gary W. Jackson